**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

MICHAEL O'CONNOR,                                    :
JOHNNY SZETO,                                        :
ANTONIO ROSADO,                                      :          Case No. 14-CV-5547 (ARR)(MDG)
RICHARD DRAEGER,                                     :
MICHAEL STOVALL,                                     :
DEBRA CONTINO,                                       :
GEORGE FISHER,                                       :
RONALD BRINKLEY,                                     :
HERBERT MAEWEATHER, *on behalf of*                   :
*themselves and others similarly situated*,          :
                                                     :
                          Plaintiffs,                :
                                                     :
                   - against -                       :
                                                     :
HENKEL CORPORATION and                               :          JURY TRIAL DEMANDED
DIAL CORPORATION,                                    :
                                                     :
                          Defendants.                :
-----------------------------------------------------------x


# FIRST AMENDED COMPLAINT

**LEE LITIGATION GROUP, PLLC**
**C.K. Lee (CL 4086)**
**ShanShan Zheng (SZ 3301)**
**30 East 39th Street, Second Floor**
**New York, NY 10016**
**Tel.: 212-465-1188**
**Fax: 212-465-1181**
*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................3

NATURE OF THE ACTION .....................................................................................3

JURISDICTION AND VENUE..................................................................................7

PARTIES ...................................................................................................................8
    Plaintiffs .............................................................................................................8
    Defendants ........................................................................................................12

FACTUAL ALLEGATIONS ....................................................................................12
    Federal Regulations Regarding Misbranded Drugs and Cosmetics ...........................12
    State Regulations Regarding Misbranded Drugs and Cosmetics ...............................14
    Defendant's Products Are Misbranded Because They Are Packaged with False
        and Misleading Net Weight Statements and with Non-Functional Slack-Fill .....16
    Plaintiffs and Class Members Were Injured as a Result of Defendant Misleading
        and Deceptive Conduct ........................................................................22

CLASS ACTION ALLEGATIONS...........................................................................24

CAUSES OF ACTION .............................................................................................30
    COUNT I    New York General Business Law § 349 Injunction..................................30
    COUNT II    New York General Business Law § 349...................................................32
    COUNT III    New Jersey Consumer Fraud Act ..........................................................36
    COUNT IV    Consumer Legal Remedies Act (California) ...........................................38
    COUNT V    California Unfair Competition Law.........................................................41
    COUNT VI    California False Advertising Law ...........................................................43
    COUNT VII    Florida Deceptive and Unfair Trade Practices Act ................................45
    COUNT VIII    Pennsylvania Unfair Trades Practices and Consumer Protection Law....46
    COUNT IX    Arkansas Deceptive Trade Practices Act ...............................................48
    COUNT X    Breach of Express Warranties ................................................................49
    COUNT XI    Negligent Misrepresentation .................................................................51
    COUNT XII    Common Law Fraud .............................................................................53
    COUNT XIII    Unjust Enrichment ..............................................................................54

PRAYER FOR RELIEF.............................................................................................56

JURY DEMAND .......................................................................................................58

EXHIBIT A ...................................................................................Defendants' Products
EXHIBIT B ............................................................Product Containers & Plastic Platform
EXHIBIT C ....................................................Products with Usable Net Weight Shortfall
EXHIBIT D ........................................................ Products with Total Net Weight Shortfall
EXHIBIT E......................................................................................... Travel Size Sample
EXHIBIT F................................................................................................. Demand Letter

Plaintiffs, MICHAEL O'CONNOR, JOHNNY SZETO, ANTONIO ROSADO, RICHARD DRAEGER, MICHAEL STOVALL, DEBRA CONTINO, GEORGE FISHER, RONALD BRINKLEY, and HERBERT MAEWEATHER individually, and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their First Amended Complaint against the Defendants, allege the following:

## NATURE OF THE ACTION

1.     This action seeks redress on a class-wide basis for deceptive and otherwise improper business practices that Defendants, Henkel Corporation ("HENKEL") and Dial Corporation ("DIAL") (collectively, the "Defendants"), engage in with respect to the labeling and packaging of the following Right Guard® antiperspirants and deodorants:

   a.   Right Guard® Total Defense® 5
   b.   Right Guard® Xtreme Fresh™
   c.   Right Guard® Xtreme Clear®
   d.   Right Guard® Xtreme Cooling
   e.   Right Guard® Clinical Clear™
   f.   Right Guard® Sport Original
   g.   Right Guard® Sport Triathlon
   h.   Right Guard® Sport Fresh
   i.   Right Guard® Sport Active (collectively, the "Products").

2.     Defendants, with the intent to induce consumers to purchase the Products for a premium, manufacture, market and sell the Products (i) with labels that list a false and misleading net weight of actual usable deodorant/antiperspirant, (ii) with labels that list a false and misleading total net weight of deodorant/antiperspirant (whether usable or unusable) and (iii) with non-functional slack-fill, in violation of consumer protection laws of the 50 states and District of Columbia.

3.     Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale the Products.

4.     During the Class Period, Defendants purposefully sold the Products (i) with labels that list a false and misleading net weight and (ii) with non-functional slack-fill, throughout the United States. Defendants' misrepresentations include labeling and packaging the Products in containers which had:

    a.   Net weight statements that were greater than the ***actual*** weight of usable deodorant/antiperspirant therein, referred to as "short weight" (in industry parlance) which, when displayed for sale to Plaintiffs and other reasonable consumers, caused false representations as to the correct weight of the Products;

    b.   Net weight statements that were greater than the ***total*** net weight (including usable and unusable portions of deodorant/antiperspirant) in the containers thereof, which when displayed for sale to Plaintiffs and other reasonable consumers, caused false representations as to the correct weight of the Products; and

    c.   Void space not visible by consumers, referred to as "***non-functional slack-fill.***" This non-functional slack-fill packaging, when displayed for sale to Plaintiffs and other reasonable consumers, caused the false impression that there was more deodorant/antiperspirant than actually packaged.

5.     Plaintiffs and Class members viewed Defendants' misleading labeling and Product packaging, relied on the representations and were thereby deceived in deciding to purchase the Products for a premium price.

6.     Defendants violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.  These statutes are:

a.  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
c.  Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
d.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
e.  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
f.  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
g.  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
h.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
i.  District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
j.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
k.  Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
l.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
m.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
n.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
o.  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
p.  Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
q.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
r.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
s.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
t.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
u.  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
v.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
w.  Michigan Consumer Protection Act, § § 445.901, *et seq.;*
x.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
y.  Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
z.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

*aa.* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

*bb.* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

*cc.* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

*dd.* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

*ee.* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

*ff.* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq. ;*

*gg.* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

*hh.* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

*ii.* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

*jj.* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

*kk.* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

*ll.* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

*mm.* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

*nn.* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*oo.* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

*pp.* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

*qq.* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*rr.* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et sep.;*

*ss.* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

*tt.* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

*uu.* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

*vv.* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

*ww.* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

*xx.* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

*yy.* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

7.     Defendants have deceived Plaintiffs and other consumers nationwide by mischaracterizing the quantity of deodorant and antiperspirant (whether usable or unusable) in their Products. Defendants have also deceived Plaintiffs and other consumers nationwide by mischaracterizing the volume of their Products. Defendants have been unjustly enriched as a result of their conduct. Through these unfair and deceptive practices, Defendants have collected hundreds of millions of dollars from the sale of their Products that they would not have otherwise earned. Plaintiffs bring this action to stop Defendants' misleading practice.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

9.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C § 1331 because it arises under the laws of the United States.

10.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

11.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

12.     The Court has personal jurisdiction over Defendants because their Products are advertised, marketed, distributed and sold throughout the United States; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial and not isolated activity within New York State.

13.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and

Defendants are subject to personal jurisdiction in this District. Both Plaintiffs O'CONNOR and SZETO reside in and used Defendants' Products in Kings County.

<div align="center">**PARTIES**</div>

*New York Plaintiffs*

14.     Plaintiff, MICHAEL O'CONNOR, is a citizen of and resides in the State of New York. Plaintiff O'CONNOR was exposed to Defendants' Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of New York within the past six months. Plaintiff O'CONNOR has purchased Right Guard® Products, including a Right Guard® Total Defense® 5 pack of 6 for the purchase price of approximately $19.47 (or more). Plaintiff O'CONNOR has purchased the Products from various stores as well as on Amazon.com. Plaintiff O'CONNOR purchased the Product(s) at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein. Plaintiff O'CONNOR purchased and used the Products in Kings County.

15.     Plaintiff, JOHNNY SZETO, is a citizen of and resides in the State of New York. Plaintiff SZETO was exposed to Defendants' Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of New York within the past year. Plaintiff SZETO has purchased Right Guard® Products, including a Right Guard® Total Defense® 5 for the purchase price of approximately $3.59 (or more). Plaintiff SZETO has purchased the Products from various stores including Walgreens. Plaintiff SZETO purchased the Product(s) at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein. Plaintiff SZETO resides in and used the Products in Kings County.

*New Jersey Plaintiff*

16.     Plaintiff, ANTONIO ROSADO, is a citizen of and resides in the State of New Jersey. Plaintiff ROSADO was exposed to Defendants' Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of New Jersey within the past six months. Plaintiff ROSADO has purchased Right Guard® Products, including Right Guard® Total Defense® 5 for the purchase price of approximately $3.99 (or more). Plaintiff ROSADO has purchased the Products from various stores, including but not limited to Shoprite. Plaintiff ROSADO purchased the Product(s) at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

*California Plaintiffs*

17.     Plaintiff, RICHARD DRAEGER, is a citizen of and resides in the State of California. Plaintiff DRAEGER was exposed to Defendants' Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of California within the past year. Plaintiff DRAEGER has purchased Right Guard® Products, including Right Guard® Total Defense® 5 for the purchase price of approximately $3.99 (or more). Plaintiff DRAEGER has purchased the Products from various stores, including but not limited to Costco. Plaintiff DRAEGER purchased the Product(s) at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

18.     Plaintiff, MICHAEL STOVALL, is a citizen of and resides in the State of California. Plaintiff STOVALL was exposed to Defendants' Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal

consumption in the State of California within the past year. Plaintiff STOVALL has purchased Right Guard® Products, including Right Guard® Xtreme Fresh™ for the purchase price of approximately $3.47 (or more). Plaintiff STOVALL has purchased the Products from various stores, including but not limited to Walmart. Plaintiff STOVALL purchased the Product(s) at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

***Florida Plaintiffs***

19.     Plaintiff, DEBRA CONTINO, is a citizen of and resides in the State of Florida. Plaintiff CONTINO was exposed to Defendants' Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of Florida within the past year. Plaintiff CONTINO has purchased Right Guard® Products, including Right Guard® Total Defense® 5 for the purchase price of approximately $3.99 (or more). Plaintiff CONTINO has purchased the Products from various stores, including but not limited to Walmart and Winn Dixie. Plaintiff CONTINO purchased the Product(s) at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

20.     Plaintiff, GEORGE FISHER, is a citizen of and resides in the State of Florida. Plaintiff FISHER was exposed to Defendants' Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of Florida within the past year. Plaintiff FISHER has purchased Right Guard® Products, including Right Guard® Total Defense® 5 for the purchase price of approximately $3.99 (or more). Plaintiff FISHER has purchased the Products from various stores, including but not limited to Walmart. Plaintiff FISHER purchased the Product(s) at a

premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

### Pennsylvania Plaintiff

21.     Plaintiff, RONALD BRINKLEY, is a citizen of and resides in the State of Pennsylvania. Plaintiff BRINKLEY was exposed to Defendants' Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of Pennsylvania within the past year. Plaintiff BRINKLEY has purchased Right Guard® Products, including Right Guard® Xtreme Fresh™ for the purchase price of approximately $3.47 (or more). Plaintiff BRINKLEY has purchased the Products from various stores, including but not limited to Walmart. Plaintiff BRINKLEY purchased the Product(s) at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

### Arkansas Plaintiff

22.     Plaintiff, HERBERT MAEWEATHER, is a citizen of and resides in the State of Arkansas. Plaintiff MAEWEATHER was exposed to Defendants' Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of Arkansas within the past year. Plaintiff MAEWEATHER has purchased Right Guard® Products, including Right Guard® Total Defense® 5 for the purchase price of approximately $3.25 (or more). Plaintiff MAEWEATHER has purchased the Products from various stores, including but not limited to Walmart and Kmart. Plaintiff MAEWEATHER purchased the Product(s) at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

*Defendants*

23.     Defendant HENKEL is a Delaware corporation with headquarters at 7201 E. Henkel Way, Scottsdale, Arizona 85255, and an address for service of process located at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808. Defendant HENKEL wholly owns Defendant DIAL.

24.     Defendant DIAL is a Delaware corporation with headquarters at 7201 E. Henkel Way, Scottsdale, Arizona 85255, and an address for service of process at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808. DIAL is a manufacturer of household-cleaning products and personal-care products, including the Right Guard® Products.

25.     Defendant DIAL owns the trademarks that appear on the Products.

26.     Defendants operate as a single integrated and common enterprise. Together, the Defendants are jointly engaged in the manufacturing, marketing, distribution and sale of the Products to hundreds of thousands of consumers nationwide.

## FACTUAL ALLEGATIONS

**Federal Regulations Regarding Misbranded Drugs and Cosmetics**

27.     Drug and cosmetic manufacturers are required to comply with federal and state laws and regulations that govern the labeling and packaging of their products.

28.     The FDCA, 21 U.S.C. §§ 301 *et seq.*, governs the sale of foods, drugs and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic, affects the regulations by which the product must abide. In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example by asking why

the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example fluoride in toothpaste.[1]

29.     The FDCA defines <u>drugs</u>, in part, by their intended use, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," or "articles (other than food) intended to affect the structure or function of the body of man or other animals," 21 U.S.C. § 321(g)(1).

30.     Under 21 U.S.C. §§ 352(a) and 352(i)(1), respectively, "[a] drug or device shall be deemed to be misbranded. . . [i]f its labeling is false or misleading in any particular" and "[i]f it is a drug and its container is so made, formed, or filled as to be misleading. . . ."

31.     The FDCA defines <u>cosmetics</u> by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering appearance," 21 U.S.C. § 321(i)(1). Among the products included in this definition are deodorants.[2]

32.     Under 21 U.S.C. §§ 362(a) and 362(d), respectively, "[a] cosmetic shall be deemed to be misbranded. . . [i]f its labeling is false or misleading in any particular" and [i]f its container is so made, formed, or filled as to be misleading. . . ."

33.     The FDA has explained that "[s]ome products meet the definitions of both cosmetics and drugs," for example, "when a product has two intended uses" as with "deodorants

---

[1] http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm, *see also* 21 C.F.R. § 201.128 (The words intended uses or words of similar import . . . refer to the objective intent of the persons legally responsible for the labeling of drugs. The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. . . . But if a manufacturer knows, or has knowledge of facts that would give him notice, that a drug introduced into interstate commerce by him is to be used for conditions, purposes, or uses other than the ones for which he offers it, he is required to provide adequate labeling for such a drug which accords with such other uses to which the article is to be put.)

[2] *See* http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm

that are also antiperspirants. . . [s]uch products must comply with the requirements for both cosmetics and drugs."[3]

## State Regulations Regarding Misbranded Drugs and Cosmetics

34.     Courts have recognized that federal law does not preempt state law causes of action for labeling violations if they "seek to impose requirements that are identical to those imposed by the FDCA." *Ackerman v. Coca Cola*, No. 09-0395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010). This is so because "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action." *Ackerman*, 2010 WL 2925955, at *6 (citing *Bates*, 544 U.S. at 432).

35.     Numerous states forbid the misbranding of drugs and cosmetics in language identical or similar to its federal counterparts, including the following:

**a.  *New York***

Drug: "A drug or device shall be deemed to be misbranded: a. If its labeling is false or misleading in any particular. . . h.(1)If it is a drug and its container is so made, formed or filled as to be misleading. . . ." New York Edn. Law § 6815.[4]

Cosmetic: "A cosmetic shall be deemed to be misbranded: a. If its labeling is false or misleading in any particular . . . d. (1) [i]f its container is so made, formed, or filled as to be misleading. . . ." New York Edn. Law § 6818.

---

[3] *Id.*
[4] *See also* Title 24 of the Rules of the City of New York § 71.05 which provides that "[a] drug shall be deemed misbranded as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §352) or the State Education Law (§6815)…"

**b. New Jersey**

Drug: "For the purposes of this subtitle a drug or device shall also be deemed to be misbranded: a. If its labeling is false or misleading in any particular . . . i. (1) [i]f it is a drug and its container is so made, formed or filled as to be misleading . . . ." NJ Rev Stat § 24:5-18.

Cosmetic: "For the purposes of this subtitle a cosmetic shall also be deemed to be misbranded: a. If its labeling is false or misleading in any particular . . . i. (1) [i]f it is a drug and its container is so made, formed or filled as to be misleading . . . ." NJ Rev Stat § 24:5-18.1.

**c. California**

Drug: "Any drug or device is misbranded if its labeling is false or misleading in any particular." California Health & Safety Code § 111330.

"Any drug or device is misbranded if its container is so made, formed, or filled as to be misleading." California Health & Safety Code § 111390.

Cosmetic: "Any cosmetic is misbranded if its labeling is false or misleading in any particular." California Health & Safety Code § 111730.

"Any cosmetic is misbranded if its container is so made, formed, or filled as to be misleading." California Health & Safety Code § 111750.

**d. Florida**

Drug: "A drug or device is misbranded: (1) If its labeling is in any way false or misleading. . . (9) If it is: (a)   A drug and its container or finished dosage form is so made, formed, or filled as to be misleading. . . ." Florida Drug and Cosmetic Act, § 499.007, Fla. Stat. Ann.

Cosmetic: "A cosmetic is misbranded: (1) If its labeling is false or misleading in any particular. . . (4) If its container is so made, formed, or filled as to be misleading. . . ." Florida Drug and Cosmetic Act, § 499.009, Fla. Stat. Ann.

### e. *Pennsylvania*

Drug and Cosmetic: "Section 8. Misbranding- A controlled substance, other drug or device or cosmetic shall be deemed to be misbranded (1) If its labeling is false or misleading in any particular. . . (11) If it is a drug, device or cosmetic and its container is so made, formed or filled as to be misleading." The Controlled Substances, Drugs, Device, and Cosmetic Act, Act of 1972, P.L. 233, No. 64.

### f. *Arkansas*

Drug: "A drug or device shall be deemed to be misbranded: (1) If its labeling is false or misleading in any particular. . . (9) (A) If it is a drug and its container is so made, formed, or filled as to be misleading…." Ark. Code Ann. § 20-56-211.

Cosmetic: "A cosmetic shall be deemed to be misbranded: (1) If its labeling is false or misleading in any particular. . . (4) If its container is so made, formed, or filled as to be misleading…." Ark. Code Ann. § 20-56-213.

36.     Deodorants are treated as cosmetics under the state laws of the fifty states and the District of Columbia. Deodorants that contain antiperspirants are treated as both cosmetics and drugs under the state laws of the fifty states and the District of Columbia.

**Defendants' Products Are Misbranded Because They Are Packaged with False and Misleading Net Weight Statements and with Non-Functional Slack-Fill**

37.     Defendants HENKEL and DIAL manufacture, market, sell and distribute, *inter alia*, various consumer products under the well-known household brand name Right Guard®. Defendants sell their products at most supermarket chains, convenience stores and major retail

outlets throughout the United States, including but not limited to Costco, Target, Wal-Mart, Walgreens, CVS and Rite Aid.

38. The Products, depicted in **EXHIBIT A**, are sold as follows:

| Product | Approximate Price |
| --- | --- |
| Right Guard® Total Defense® 5 (2.6 oz.) | $3.99 (or more) |
| Right Guard® Total Defense® 5 (3.0 oz.) | $4.29 (or more) |
| Right Guard® Xtreme Fresh™ (2.6 oz.) | $3.99 (or more) |
| Right Guard® Xtreme Fresh™ (3.0 oz.) | $4.29 (or more) |
| Right Guard® Xtreme Clear® (2.6 oz.) | $3.99 (or more) |
| Right Guard® Xtreme Cooling (3.0 oz.) | $3.99 (or more) |
| Right Guard® Clinical Clear™ (1.7 oz.) | $8.99 (or more) |
| Right Guard® Sport Original (2.6 oz.) | $2.99 (or more) |
| Right Guard® Sport Triathlon (3.0 oz.) | $3.29 (or more) |
| Right Guard® Sport Fresh (3.0 oz.) | $3.29 (or more) |
| Right Guard® Sport Active (3.0 oz.) | $3.29 (or more) |

39. Defendants HENKEL and DIAL have routinely packaged the Products with a false and misleading net weight and in containers with non-functional slack-fill. Non-functional slack-fill is the difference between the actual capacity of a container and the volume of product contained within. Defendants' misrepresentations also include labeling and packaging the Products in containers with net weight statements that are greater than the actual weight of usable product therein, referred to as "short weight," as well as net weight statements that are greater than the total weight of usable and unusable deodorant/antiperspirant therein.

**False and Misleading Net Weight Statements**

40. All of the Products come in containers that list the net weight as either 2.6 or 3.0 ounces. However, the actual deodorant/antiperspirant that is accessible by consumers for usage in the Products is less than the amount advertised due to a significant portion of the deodorant/antiperspirant being embedded under the plastic platform ("bed") on which the

deodorant sticks stand, rendering such portion unusable as it cannot be accessed by the consumer. *See* **EXHIBIT B** for size of the bed in the Products.

41. As Defendants have deceived Plaintiffs and consumers nationwide by mischaracterizing the usable quantity of deodorant/antiperspirant in the Products, Defendants' net weight labels are false and deceptive. *See* **EXHIBIT C** for the Products whose usable weight fall short of the net weight listed on the Product labels.

42. Defendants also sold and continue to sell certain Products in which the total net weight of the deodorant/antiperspirant (whether usable or not) is below the amount advertised on the labels as net weight. For such Product lines, even the sum of (i) the usable portion of deodorant/antiperspirant and (ii) the unusable portion located under the bed, are below the net weight as advertised on the Product labels. As such, Defendants' net weight labels are false and deceptive. *See* **EXHIBIT D** for the Products whose total net weight fall short of the net weight listed on the Product labels.

43. Plaintiffs and Class members were misled about the quantity of deodorant/antiperspirant in the Products.

44. The usable net weights in the Right Guard® Products fall short of the net weight listed on the labels. *See* **EXHIBIT C**. The total net weights (including usable and unusable deodorant/antiperspirant) in the Xtreme, Clinical and Sport Product lines fall short of the net weight listed on the labels. *See* **EXHIBIT D**. As a result, Plaintiffs and Class members have purchased Products with less deodorant/antiperspirant than they believed they were purchasing.

**Non-Functional Slack-Fill**

45. Plaintiffs and Class members were misled about the volume of the Products contained within the containers in comparison to the size of the Product packaging. The

container size and dimensions for all the Right Guard® Products, except Clinical Clear™, are exactly the same. The Products are sold in a container which is approximately 5 ½ inches long and 2 ½ inches wide and are elliptically shaped.

46. Some of the 3.0 ounce Products have stickers on the container cap stating: "BONUS! +15% MORE" in large font with "vs 2.6oz." in miniscule font. Despite the "15% More" claims on the 3.0 ounce Products, its containers are the exact same size and dimensions as the 2.6 ounce Products. As such, the 15% more label itself demonstrates that there is at least 15% of slack fill in the 2.6 ounce Products since identical sized containers are used for the 3.0 ounce Products. *See* **EXHIBIT A** for product packaging and content of the 2.6 and 3.0 ounce Products.

47. The actual deodorant/antiperspirant stick inside the 2.6 ounce Products is only approximately 2 ½ inches tall and 2 ½ inches wide. The actual deodorant/antiperspirant stick inside the 3.0 ounce Products is only approximately 3 inches tall and 2 ½ inches wide. Thus, the containers have 2 ½ to 3 inches of slack-fill in height and make it appear to Plaintiffs and Class members that they are buying more than what is actually being sold. As such, Defendants' Products are packaged in containers made, formed or filled as to be misleading. *See* **EXHIBIT A** for the Right Guard® Products with non-functional slack-fill. Plaintiffs and Class members only received 45% of what Defendants represented they would be getting in the 2.6 ounce Products due to the 55% non-functional slack-fill and only received 55% of what Defendants represented they would be getting in the 3 ounce Products due to 45% non-functional slack-fill.

48. There is no functional reason to package the Products with slack-fill. The Products are designed with a propel/repel mechanism. The propel/repel mechanism utilized in the containers, which pushes up the deodorant stick, does not require an abundant amount of space to function. For example, a fully functioning travel-size deodorant container using a

similar standard propel/repel mechanism is only 3" tall in its entirety with the propelling mechanism taking up only ⅜ of an inch. *See* **EXHIBIT E** for Defendants' travel size products with a similar propel/repel mechanism.

49.     Additionally, a brand new Product can be repelled to show that in its starting position, it has already been propelled midway to bring the deodorant/antiperspirant up to the top of the body of the container. There is no doubt that there is no practical business purpose for the non-functional slack-fill used to package the Products other than to mislead consumers as to the actual volume of usable deodorant/antiperspirant in the Products.

50.     Defendants' Products are also uniquely deceptive because consumers never actually see the amount of deodorant/antiperspirant they are using until the Product is used up, whereupon Plaintiffs and reasonable consumers will assume they used up all 5 ½ inches of deodorant/antiperspirant bought when in fact, they only used up 2 ½ inches of height (in the case of the 2.6 ounce Products) or 3 inches of height (in the case of the 3.0 ounce Products).

**Defendants' Products are Misbranded**

51.     Defendants HENKEL and DIAL's failure to (i) state the correct net weight of usable deodorant/antiperspirant in the Products and (ii) properly package the Products without non-functional slack-fill constitute misbranding under federal and state laws because the Products are being sold (i) with labels that are false and misleading and (ii) in containers that are made, formed or filled as to be misleading. As a result of such conduct, Plaintiffs and Class members were misled (and Class members will continue to be misled) into believing that they were receiving more deodorant/antiperspirant than they actually were. Defendants lacked any lawful justification for doing so.

52. In making their purchases, Plaintiffs and Class members relied on the net weight listed on the Product labels in evaluating how much deodorant/antiperspirant was in the Products. Plaintiffs and Class members also relied on the size of the containers to believe that the entire volume of the packaging would be filled to capacity with deodorant/antiperspirant, exclusive of the container's functional elements. Labeling and packaging the Products misleadingly constitutes unlawful business acts and practices and are geared toward making consumers believe that they are buying more of the Product than what is being sold.

53. Plaintiffs and Class members paid the full price of the Products and received less than the amount advertised. Additionally, they only received 45% of what Defendants represented they would be getting in the 2.6 ounce Products due to the 55% non-functional slack-fill and only received 55% of what Defendants represented they would be getting in the 3 ounce Products due to 45% non-functional slack-fill. In order for Plaintiffs and Class members to be made whole, Plaintiffs and Class members would have to receive (i) the amount of usable deodorant/antiperspirant equal to or exceeding the net weight listed on the Products, (ii) the amount of usable and unusable deodorant/antiperspirant equal to or exceeding the net weight listed on the Products and (iii) enough of the deodorant/antiperspirant so that there is no non-functional slack-fill or have paid 55% less for each of the 2.6 ounce Products or 45% less for each of the 3.0 ounce Products.

54. Defendants could provide consumers with clarification as to the volume of the Products and usable quantity being sold simply by (i) properly listing the correct weight of usable deodorant/antiperspirant on the labels and (ii) either of the following:

        a. Adding a line marking the height/actual dimensions of the Product on the labels, or

b. Using a clear see-through package or using a see-through strip to allow consumers to discern the actual volume of deodorant/antiperspirant being sold.

## Plaintiffs and Class Members Were Injured as a Result of Defendants' Misleading and Deceptive Conduct

55. Defendants HENKEL and DIAL have violated federal and state laws against misbranding of drug and cosmetic products because it misled Plaintiffs and Class members about the actual net weight and volume of the Products in comparison to the size of the Products' packaging. The quantity of deodorant/antiperspirant accessible for usage in the containers is less than the net weight listed on the Product labels. For certain Product lines, even the total weight of both usable and non-usable deodorant/antiperspirant contained in such products is less than the net weight advertised by Defendants. Further, the size of the containers in relation to the actual amount of the Products contained therein give the false impression that the consumer is buying more than they are actually receiving.

56. Plaintiffs and Class members were exposed to Defendants' false Product labels and deceptive Product packaging and Class members continue to be exposed to these false and misleading misrepresentations.

57. Defendants HENKEL and DIAL's labeling and Product packaging were material factors in Plaintiffs' and Class members' decisions to purchase the Products. Based on Defendants' labeling and Product packaging, Plaintiffs and Class members believed that they were getting more of the Products than was actually being sold or at the very least, believed they were getting the amount stated on the Product labels. Had Plaintiffs known Defendants' labeling was false and their packaging slack-filled, they would not have bought the Products.

58.     Plaintiffs did not know, and had no reason to know, that the Products contained less deodorant/antiperspirant than advertised or that the Products were packaged with non-functional slack-fill.

59.     Defendants HENKEL and DIAL's Product labeling and packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendants' misrepresentations are part of their systematic Product packaging practice.

60.     A reasonable consumer when deciding to purchase the Products, would consider the types of misrepresentations alleged herein. A reasonable person would (and Plaintiffs did) attach importance to whether Defendants' Products are "misbranded," *i.e.,* not legally salable, or capable of legal possession, and/or contain false labels and non-functional slack-fill.

61.     Plaintiffs and Class members relied on the labeling and representations on Defendants' Product packaging.

62.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

63.     Defendants HENKEL and DIAL's net weight misrepresentations and non-functional slack-fill packaging are misleading and in violation of FDA and consumer protection laws of each of the fifty states and the District of Columbia, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States. Plaintiffs and Class members would not have bought the Products had they known they were misbranded and illegal to sell or possess.

64.     As a result of Defendants' misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

65.     Plaintiff and the Class (defined below) have been damaged by Defendants'

deceptive and unfair conduct in that they purchased Products with non-functional slack-fill and

paid prices they otherwise would not have paid had Defendants not misrepresented the Products'

quantity or actual size.

66.     Plaintiffs have standing to sue in this case because Plaintiffs have a personal

injury in fact, which is caused by Defendant's misleading packaging and labeling practices

alleged herein, and which a favorable decision will likely redress. *See Mahon v. Ticor Title Ins.

Co.*, 683 F.3d 59, 62 (2d Cir.2012). Courts have routinely held that economic injury is sufficient

for the standing requirement. *See, e.g., In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-

MD-2413 RRM RLM, 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013)

## CLASS ACTION ALLEGATIONS

### The Nationwide Class

67.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following nationwide class (the "Class"):

> All persons or entities in the United States who made retail
> purchases of the Products during the applicable limitations period,
> and/or such subclasses as the Court may deem appropriate.

### The New York Class

68.     Plaintiffs MICHAEL O'CONNOR and JOHNNY SZETO seek to represent a

class consisting of the following subclass (the "New York Class"):

> All New York residents who made retail purchases of the Products
> during the applicable limitations period, and/or such subclasses as
> the Court may deem appropriate.

***The New Jersey Class***

69.     Plaintiff ANTONIO ROSADO seeks to represent a class consisting of the following subclass (the "New Jersey Class"):

> All New Jersey residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

***The California Class***

70.     Plaintiffs RICHARD DRAEGER and MICHAEL STOVALL seek to represent a class consisting of the following subclass (the "California Class"):

> All California residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

***The Florida Class***

71.     Plaintiffs DEBRA CONTINO and GEORGE FISHER seek to represent a class consisting of the following subclass (the "Florida Class"):

> All Florida residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

***The Pennsylvania Class***

72.     Plaintiff RONALD BRINKLEY seeks to represent a class consisting of the following subclass (the "Pennsylvania Class"):

> All Pennsylvania residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

***The Arkansas Class***

73.     Plaintiff HERBERT MAEWEATHER seeks to represent a class consisting of the following subclass (the "Arkansas Class"):

> All Arkansas residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

74. The proposed Classes exclude current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

75. Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

76. <u>Numerosity</u>: This action has been brought and may properly be maintained as a class action against Defendants under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of members in the Nationwide Class, New York Class, New Jersey Class, California Class, Florida Class, Pennsylvania Class and Arkansas Class. Based on sales of the Products, it is estimated that each Class is composed of more than 10,000 persons. Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of members. The persons in each of the Classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

77. <u>Common Questions Predominate</u>: Questions of law and fact arise from Defendants' conduct described herein. Such questions are common to all Class members because each Class member's claim derives from the same false, misleading and deceptive misconduct. The common questions of law and fact involved predominate over any questions affecting only

Plaintiffs or individual Class members. Thus, proof of a common or single set of facts will establish the right of each member of the Class to recover. Among the questions of law and fact common to the Class are:

i. Whether Defendants labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs, and those similarly situated, using false, misleading and/or deceptive packaging and labeling;

ii. Whether Defendants' actions constitute violations of Section 502 (21 U.S.C. § 352(i)), Section 602 (21 U.S.C. § 362(d)) of the FDCA;

iii. Whether Defendants' actions constitute violations of misbranding laws in the fifty states and District of Columbia;

iv. Whether Defendants' actions constitute deceptive and unfair practices and/or violations of consumer protection laws in the fifty states and the District of Colombia;

v. Whether Defendants omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of Products;

vi. Whether Defendants' labeling, packaging, marketing, advertising and/or selling Products constituted an unfair, unlawful or fraudulent practice;

vii. Whether Defendants' net weight disclosures on the Products' labels accurately reflect the net weight that can be used by the Class;

viii. Whether Defendants' net weight disclosures on the Products' labels accurately reflect the gross weight of deodorant/antiperspirant in the Products;

ix. The extent that the packaging of the Products during the relevant statutory period constituted unlawful slack-fill;

x. Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future;

xi. Whether the members of the Class have sustained damages as a result of Defendants' wrongful conduct;

xii. The appropriate measure of damages and/or other relief;

xiii. Whether Defendants have been unjustly enriched by their scheme of using false, misleading and/or deceptive labeling, packaging or misrepresentations; and

xiv. Whether Defendants should be enjoined from continuing their unlawful practices.

78. <u>Typicality</u>: Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased the Products during the Class Period and sustained similar injuries arising out of Defendants' conduct in violation of the consumer protection laws of each of the fifty states and the District of Columbia. Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendants' wrongful misconduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

79. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and pursue the interests of the Class and have retained competent counsel experienced in prosecuting nationwide class

actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

80.    Superiority: A Class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendants would likely unfairly receive millions of dollars or more in improper charges.

81.    The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

82.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

83.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

84.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

85.     Defendants HENKEL and DIAL's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

86.     Plaintiffs O'CONNOR and SZETO repeat and reallege each and every allegation contained above as if fully set forth herein and further allege the following:

87.     Plaintiffs O'CONNOR and SZETO bring this claim individually and on behalf of other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL § 349").

88.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

89.    Under NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

90.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion; increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

91.    The practices employed by Defendants, whereby Defendants advertised, promoted, marketed and sold their Products with false net weight statements and in packaging resulting in non-functional slack-fill are unfair, deceptive, and misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of drugs and cosmetics in language identical to that found in regulations 21 U.S.C. § 352 *et seq* and 21 U.S.C. § 362 *et seq*, promulgated pursuant to the Federal, Food, Drug, and Cosmetic Act.

92.    Under New York Edn. Law § 6815, "[a] drug or device shall be deemed to be misbranded: a. If its labeling is false or misleading in any particular . . . h. (1)If it is a drug and its container is so made, formed or filled as to be misleading . . ." New York Edn. Law § 6818 similarly states, "[a] cosmetic shall be deemed to be misbranded: a. If its labeling is false or misleading in any particular . . . d. (1) [i]f its container is so made, formed, or filled as to be misleading . . . ." The Rules of the City of New York also prohibit the misbranding of drugs and

cosmetics and explicitly incorporate New York State and federal misbranding laws by reference. Under 24 R.C.N.Y. Health Code § 71.05 (f), drugs are deemed misbranded "as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 352) or the State Education Law (§ 6815) . . . ." Cosmetics are deemed misbranded "as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 362) or the State Education Law (§ 6818) . . . ." 24. *See* 24 R.C.N.Y. Health Code § 71.05 (h).

93.     Defendants should be enjoined from labeling its Products with false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging, as described above pursuant to NY GBL § 349, New York Edn. Law § 6815, New York Edn. Law § 6818, 24 R.C.N.Y. Health Code § 71.05, 21 U.S.C. § 352, and 21 U.S.C. § 362.

94.     The foregoing deceptive acts and practices were directed at consumers.

95.     Plaintiffs O'CONNOR and SZETO, individually and on behalf of all others similarly situated, respectfully demand a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## **COUNT II**

### **VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

96.     Plaintiffs O'CONNOR and SZETO repeat and reallege each and every allegation contained above as if fully set forth herein and further allege the following:

97.     Plaintiffs O'CONNOR and SZETO bring this claim individually and on behalf of other members of the New York Class for violations of NY GBL § 349.

98.     Defendants' business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

99.     The practices employed by Defendants, whereby Defendants advertised, promoted, marketed and sold its Products with false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging, are unfair, deceptive and misleading and are in violation of New York Edn. Law § 6815, New York Edn. Law § 6818, 24 R.C.N.Y. Health Code § 71.05, 21 U.S.C. § 352, and 21 U.S.C. § 362 in that said Products are misbranded. The practices of Defendants also violate NY GBL § 349 for, inter alia, one or more of the following reasons:

    a.  Defendants engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Products, which did, or tended to, mislead Plaintiffs O'CONNOR, SZETO and the New York Class about facts that could not reasonably be known by them;

    b.  Defendants knowingly and falsely represented and advertised the amount of usable Product in their Product packaging with an intent to cause Plaintiffs

O'CONNOR, SZETO and members of the New York Class to believe that they were receiving more Product than they actually were;

c. Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

d. Defendants caused Plaintiffs O'CONNOR, SZETO and the New York Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through their conduct;

e. Defendants failed to reveal material facts to Plaintiffs O'CONNOR, SZETO and the New York Class with the intent that Plaintiffs O'CONNOR, SZETO and the New York Class members rely upon the omission;

f. Defendants made material representations and statements of fact to Plaintiffs O'CONNOR, SZETO and the New York Class that resulted in Plaintiffs O'CONNOR, SZETO and the New York Class reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

g. Defendants intended that Plaintiffs O'CONNOR and SZETO and members of the New York Class rely on their misrepresentations and omissions, so that Plaintiffs O'CONNOR, SZETO and the New York Class members would purchase the Products.

100. The foregoing deceptive acts and practices were directed at consumers.

101. Under all of the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

102.     Defendants' actions impact the public interest because Plaintiffs O'CONNOR, SZETO and members of the New York Class were injured in exactly the same way as thousands of others purchasing the Products as a result of and pursuant to Defendants' generalized course of deception.

103.     By committing the acts alleged in this First Amended Complaint, Defendants have misled Plaintiffs O'CONNOR, SZETO and the New York Class into purchasing the Products, in part or in whole, due to the erroneous belief that the Product packaging accurately depicts a container that is filled to capacity with usable Product, exclusive of the container's functional elements. In some instances, the Products fall short of the advertised net weight based on (i) the usable portion of deodorant/antiperspirant, or (ii) the usable and unusable portion of deodorant/antiperspirant. These are deceptive business practices that violate NY GBL § 349.

104.     Defendants' deceptive labeling and Product packaging misled Plaintiffs O'CONNOR and SZETO, and is likely in the future to mislead reasonable consumers. Had Plaintiffs O'CONNOR, SZETO and members of the New York Class known of the true facts about the Products, they would not have purchased the Products and/or paid substantially less for another product.

105.     Plaintiffs O'CONNOR, SZETO and the other Class members suffered a loss as a result of Defendants' deceptive and unfair trade acts. Specifically, as a result of Defendants' deceptive and unfair acts and practices, Plaintiffs and the other New York Class members purchased the Product(s) at a premium price and were financially injured as a result of Defendant's deceptive conduct as alleged herein.

106.     As a result of Defendants' deceptive and unfair acts and practices, Plaintiffs and the other Class members suffered monetary losses associated with the purchase of Products with

net weight misrepresentations and non-functional slack-fill, i.e., receiving less than the advertised amounts and only approximately 45% (for the 2.6 ounce Products) and only approximately 55% (for the 3.0 ounce Products) of the capacity of the packaging. The foregoing deceptive acts, omissions and practices set forth in connection with Defendants' violations of NY GBL § 349 proximately caused Plaintiffs O'CONNOR, SZETO and other members of the New York Class to suffer actual damages in the form of, inter alia, monies spent to purchase the Products. Plaintiffs O'CONNOR, SZETO and other members of the New York Class are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT III

**New Jersey Consumer Fraud Act,**
**N.J.S.A.56: 8-1,** *et seq.*

107.　Plaintiff ANTONIO ROSADO repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

108.　Plaintiff ROSADO brings this claim individually and on behalf of the other members of the New Jersey Class for violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

109.　At all relevant times, Plaintiffs and Defendants were and are "persons," as defined by N.J.S.A. 56:8-1(d).

110.　At all relevant times, Defendants' Products constituted "merchandise," as defined by N.J.S.A. 56:8-1(c).

111.　At all relevant times, Defendants' manufacturing, marketing, advertising, sales and/or distribution of the Products at issue met the definition of "advertisement" set forth by N.J.S.A. 56:8-1(a).

112.	At all relevant times, Defendants' manufacturing, marketing, advertising, sales and/or distribution of the Products at issue met the definition of "sale" set forth by N.J.S.A. 56:8-1(e).

113.	N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission, …is declared to be an unlawful practice…"

114.	Plaintiffs and members of the Class are consumers who purchased consumer goods – the Right Guard Products – pursuant to a consumer transaction for personal use and are, therefore, subject to protection under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*.

115.	Defendants have made and continue to make deceptive, false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging, as alleged herein.

116.	As described in detail above, Defendants uniformly misrepresented to Plaintiff ROSADO and each member of the New Jersey Class, by means of their advertising, marketing and Product packaging, that they were getting more of the Products than was actually being sold, or at the very least, the quantity advertised.

117.	Defendants have therefore engaged in practices which are unconscionable, deceptive and fraudulent and which are based on false pretenses, false promises,

misrepresentations, and the knowing concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission in their manufacturing, advertising, marketing, selling and distribution of the Products. Defendants have therefore violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

118. As a direct and proximate result of Defendants' improper conduct, Plaintiff ROSADO and other members of the New Jersey Class have suffered damages and ascertainable losses of moneys and/or property, by paying more for the Products than they would have, and/or by purchasing the Products which they would not have purchased, if the volume of such Products had not been misrepresented, in amounts to be determined at trial.

### COUNT IV

**Violations of California's Consumer Legal Remedies Act,
Cal. Civ. Code § 1750, *et seq*.**

119. Plaintiffs DRAEGER and STOVALL repeat and reallege each and every allegation contained above as if fully set forth herein and further allege the following:

120. Plaintiffs DRAEGER and STOVALL bring this claim individually and on behalf of the other members of the California Class for Defendants' violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

121. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. (the "CLRA"). This cause of action seeks monetary damages and injunctive relief pursuant to California Civil Code § 1782.

122. A demand letter was sent to Defendants prior to the filing of this Complaint. A copy of Plaintiffs' notice and demand letter sent to Defendants is attached hereto as **EXHIBIT F**. Defendants did not correct the misrepresentations identified in the demand letter.

123. Defendants' actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods to consumers.

124. Plaintiffs DRAEGER and STOVALL and California Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff ARELLANO and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiffs DRAEGER and STOVALL and the California Class members are not sophisticated experts with independent knowledge of the manufacturing or packaging of the Products.

125. Products that Plaintiffs DRAEGER and STOVALL and other California Class members purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

126. Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

127. Defendants' labeling and Product packaging violates federal and California law because it misleads consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products' packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

128. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have characteristics, benefits or quantities which they do not have.

129.    Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

130.    Plaintiffs DRAEGER and STOVALL and the California Class members are not sophisticated experts about the manufacturing process or packaging of the Products. Plaintiffs DRAEGER and STOVALL and the California Class acted reasonably when they purchased the Products based on their belief that Defendants' representations were true and lawful.

131.    Plaintiffs DRAEGER and STOVALL and the California Class suffered injuries caused by Defendants because (a) they would not have purchased the Products on the same terms absent Defendants' illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' misrepresentations and deceptive Product packaging; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

132.    Plaintiffs DRAEGER and STOVALL request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to

California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs DRAEGER, STOVALL and the members of the California Class will be harmed in that they will continue to be unable to rely on Defendants' packaging and net weight representations.

133.     Wherefore, Plaintiffs DRAEGER and STOVALL seek damages, restitution, and injunctive relief for these violations of the CLRA.

<div align="center">

**COUNT V**

**Violation of California's Unfair Competition Law,**
**California Business & Professions Code §§ 17200, *et seq*.**

</div>

134.     Plaintiffs DRAEGER and STOVALL repeat and reallege each and every allegation contained above as if fully set forth herein and further allege the following:

135.     Plaintiffs DRAEGER and STOVALL bring this claim individually and on behalf of the members of the proposed California Class for Defendants' violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

136.     The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

137.     Defendants' Product packaging violates federal and California law because it misleads consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products' packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

138. Defendants' business practices, described herein, violated the "unlawful" prong of the UCL by violating Sections 502 and 602 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 352, 21 U.S.C. § 362, California Health & Safety Code § 111390, the CLRA, and other applicable law as described herein.

139. Defendants' business practice, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' advertising is of no benefit to consumers, and their failure to comply with the FDCA and parallel California laws concerning misleading product packaging offends the public policy advanced by the FDCA "to promote the public health" by "taking appropriate action on the marketing of regulated products." 21 U.S.C. § 393(b).

140. Defendants violated the "fraudulent" prong of the UCL by misleading Plaintiffs DRAEGER and STOVALL and the California Class to believe that quantity representations about the Products were lawful, true and not intended to deceive or mislead the consumers.

141. Plaintiffs DRAEGER and STOVALL and the California Class members are not sophisticated experts about the characteristics, benefits, or quantities of the Products. Plaintiffs DRAEGER and STOVALL and the California Class acted reasonably when they purchased the Products based on their belief that Defendants' representations were true and lawful.

142. Plaintiffs DRAEGER and STOVALL and the California Class lost money or property as a result of Defendants' UCL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for

the Products due to Defendants' deceptive and misleading Product packaging; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

## COUNT VI

**Violation of California's False Advertising Law,**
**California Business & Professions Code §§ 17500, *et seq*.**

143. Plaintiffs DRAEGER and STOVALL repeat and reallege each and every allegation contained above as if fully set forth herein and further allege the following:

144. Plaintiffs DRAEGER and STOVALL bring this claim individually and on behalf of the members of the proposed California Class for Defendants' violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

145. Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state... in any advertising device ... or in any other manner or means whatever... any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

146. Defendants engaged in a scheme of offering misbranded Products for sale to Plaintiffs DRAEGER and STOVALL and the California Class members by way of product packaging and labeling. These materials misrepresented the true content and nature of the misbranded Products. Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the Product packaging and labeling were intended as inducements to purchase Defendants' Products, and are representations disseminated by Defendants to Plaintiffs DRAEGER and

STOVALL and the California Class members. Defendants knew that these representations were unauthorized, inaccurate, and misleading.

147. Defendants' Product packaging violates federal and California law because it misleads consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products' packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

148. Defendants violated § 17500, *et seq.* by misleading Plaintiffs DRAEGER and STOVALL and the California Class about the net weight and volume of the Products as described herein.

149. Defendants knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that their representations about the quantity of usable Product were untrue and misleading.

150. Plaintiffs DRAEGER and STOVALL and the California Class lost money or property as a result of Defendants' FAL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' deceptive and misleading net weight statements and Product packaging; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

## COUNT VII

**Violation of Florida's Deceptive and Unfair Trade Practices Act,
Fla. Stat. Ann. § 501.201, *et seq.***

151.    Plaintiffs CONTINO and FISHER repeat and reallege each and every allegation contained above as if fully set forth herein and further allege the following:

152.    Plaintiffs CONTINO and FISHER bring this claim individually and on behalf of the Florida Class for Defendants' violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

153.    Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes "unfair or deceptive acts or practices in the conduct or any trade or commerce" in Florida unlawful.

154.    Throughout the Class Period, by advertising, marketing, distributing, and/or selling the Products with net weight misrepresentations and non-functional slack-fill, to Plaintiffs CONTINO and FISHER and other Florida Class members, Defendants violated the FDUTPA by engaging in false advertising concerning the usable quantity and volume of the Products.

155.    Defendants have made and continue to make deceptive, false and misleading statements concerning the net weight and volume of their Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning the amount of usable Product being sold, as alleged herein. In some instances, the Products fall short of the advertised net weight even when taking the unusable portion of deodorant/antiperspirant into account. Defendants also falsely represented the volume of the Products contained within the containers in comparison to the size of the Products' packaging, which they intended to deceive and/or mislead and did deceive and/or mislead the consumers into believing that the consumer is buying more Product than they are actually receiving.

156.     Plaintiffs CONTINO and FISHER and other Florida Class members seek to enjoin such unlawful acts and practices as described above. Each of the Florida Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that they will continue to be unable to rely on the Defendants' Product labeling and packaging

157.     Had Plaintiffs CONTINO and FISHER and the Florida Class members known the misleading and/or deceptive nature of Defendants' claims, they would not have purchased the Products.

158.     Plaintiffs CONTINO and FISHER and the Florida Class members were injured in fact and lost money as a result of Defendants' conduct of improperly misleading consumers about the volume of the Products. Plaintiffs CONTINO and FISHER and the Florida Class members paid for Defendants' premium priced Products, but received Products that were worth less than the Products for which they paid.

159.     Plaintiffs CONTINO and FISHER and the Florida Class seek declaratory relief, enjoining Defendants from continuing to disseminate their false and misleading statements, actual damages plus attorney's fees and court costs, and other relief allowable under the FDUTPA.

## COUNT VIII

**Pennsylvania's Unfair Trade Practices and Consumer Protection Law,
73 Penn. Stat. Ann. § § 201-1, *et seq.***

160.     Plaintiff RONALD BRINKLEY repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

161.     Plaintiff BRINKLEY brings this claim individually and on behalf of the Pennsylvania Class.

162. This is a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(xxi).

163. At all relevant times material hereto, Defendants conducted trade and commerce within the meaning of the UTPCPL.

164. Plaintiff BRINKLEY and the Pennsylvania Class are "persons" as defined and construed under the UTPCPL.

165. Defendants have made and continue to make deceptive, false and misleading representations concerning the volume of their Products, namely manufacturing, selling, marketing, packaging and advertising the Products with non-functional slack-fill, as alleged herein. Defendants misled consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products' packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

166. Defendants' conduct as set forth herein constitutes and unconscionable commercial practice comprised of deceptive acts or practices in violation of the UTPCPL, 73 P.S. § 201-2(xxi), including their practice of misleading consumers in the promotion, marketing, advertising, packaging and labeling of their Products as described herein. Specifically, Defendants package the Products using non-functional slack-fill and with false net weight statements in an effort to deceive or mislead Plaintiff BRINKLEY and other members of the Pennsylvania Class.

167. Defendants' conduct as set forth herein has been unfair in violation of the UTPCPL because the acts or practices violate established public policy, and because the harm

they cause to consumers in Pennsylvania greatly outweighs any benefits associated with those practices.

168.     As a direct and proximate result of Defendants' statutory violations, Plaintiff BRINKLEY and the Pennsylvania Class members have been injured and suffered actual and ascertainable losses of money as a result of Defendants' unconscionable, deceptive, and/or unfair trade practices.

169.     As a result of the harm caused by Defendants' violation of Pennsylvania consumer protection law, Plaintiff BRINKLEY and Pennsylvania Class members are entitled to recover compensatory damages, punitive damages, and attorneys' fees as set forth below.

<div align="center">

**COUNT IX**

**Arkansas Deceptive Trade Practices Act,**
**Ark. Code § 4-88-101,** *et seq.*

</div>

170.     Plaintiff HERBERT MAEWEATHER repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

171.     Plaintiff MAEWEATHER brings this claim individually and on behalf of the Arkansas Class.

172.     This is a claim for violation of the Arkansas Deceptive Trade Practices Act ("A.C.A."), Ark. Code § 4-88-101, *et seq.*

173.     Defendants have made and continue to make deceptive, false and misleading representations concerning the volume of their Products, namely manufacturing, selling, marketing, packaging and advertising the Products with non-functional slack-fill, as alleged herein. Defendants misled consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products'

packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

174.    Defendants' conduct as set forth herein constitutes and unconscionable commercial practice comprised of deceptive acts or practices in violation of the A.C.A., including their practice of misleading consumers in the promotion, marketing, advertising, packaging and labeling of their Products as described herein. Specifically, Defendants package the Products using non-functional slack-fill and with false net weight statements in an effort to deceive or mislead Plaintiff MAEWEATHER and other members of the Arkansas Class.

175.    Defendants' conduct as set forth herein has been unfair in violation of the A.C.A. because the acts or practices violate established public policy, and because the harm they cause to consumers in Arkansas greatly outweighs any benefits associated with those practices.

176.    As a direct and proximate result of Defendants' statutory violations, Plaintiff MAEWEATHER and the Arkansas Class members have been injured and suffered actual and ascertainable losses of money as a result of Defendants' unconscionable, deceptive, and/or unfair trade practices.

177.    As a result of the harm caused by Defendants' violation of Arkansas consumer protection law, Plaintiff MAEWEATHER and Arkansas Class members are entitled to recover compensatory damages, punitive damages, and attorneys' fees as set forth below.

<u>COUNT X</u>

**BREACH OF EXPRESS WARRANTIES**
**(All States)**

178.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege the following:

179. Plaintiffs bring this claim individually and on behalf of the nationwide Class.

180. Defendants, as the manufacturers, marketers, distributors and sellers of the Products, provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that the Products have a particular net weight. The weight listed on the Products' labels is inaccurate because the amount of deodorant/antiperspirant that is accessible for usage in the Products is significantly less than the net weight stated on the Products' labels. In some instances, the Products fall short of the advertised net weight even when taking the unusable portion of deodorant/antiperspirant into account. The net weight claims made by Defendants are an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise. Plaintiff placed importance on Defendants' net weight claims.

181. Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products with the amount of deodorant as promised.

182. As a proximate result of Defendants' breach of warranties, Plaintiffs and Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for products that did not conform to what Defendants promised in their promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

## COUNT XI

### NEGLIGENT MISREPRESENTATION
### (All States and the District of Columbia)

183. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

184. Defendants, directly or through their agents and employees, made false representations, concealment and nondisclosures to Plaintiffs and members of the Class. Defendants, through their labeling, advertising and marketing of the Products, make uniform representations regarding the Products.

185. Defendants, as the manufacturers, packagers, labelers and initial sellers of the Products purchased by Plaintiffs and members of the Class, are in the unique position of being able to provide accurate information about their Products. Therefore, there is a special and privity-like relationship between Defendants and Plaintiffs and members of the Class. *See Ebin v. Kangadis*, 297 F.R.D. 561 (S.D.N.Y. March 24, 2014) (granting class certification on negligent misrepresentation claim where plaintiffs purchased olive oil with misrepresentations in a commercial transaction).

186. Defendants had a duty to disclose the true nature of the Products and not sell them with false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging.

187. Defendants had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; Defendants actively concealed material facts from the Plaintiffs and

Defendants made partial representations that are misleading because some other material fact has not been disclosed. Defendants' failure to disclose the information it had a duty to disclose constitutes material misrepresentations and materially misleading omissions which misled the Plaintiffs who relied on Defendants in this regard to disclose all material facts accurately and truthfully and fully.

188.     Plaintiffs and members of the Class reasonably relied on Defendants' representation that their Products contain more deodorant/antiperspirant than actually packaged or at the very least, the advertised net weight.

189.     In making the representations of fact to Plaintiffs and members of the Class described herein, Defendants have failed to fulfill their duties to disclose the material facts set forth above.   The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

190.     Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

191.     Plaintiffs and members of the Class would have acted differently had they not been misled – i.e. they would not have paid money for Products in the first place.

192.     Defendants have a duty to correct the misinformation they disseminated through their labeling and packaging of the Products. By not informing Plaintiffs and members of the Class of the correct usable and total net weights, or that the containers are packaged with non-functional slack-fill, Defendants breached their duty. Defendants also profited financially as a result of this breach.

193. Plaintiffs and members of the Class relied upon these false representations and nondisclosures when purchasing Products, upon which reliance was justified and reasonably foreseeable.

194. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

195. Defendants acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

196. Plaintiffs and members of the Class are entitled to punitive damages. Therefore, Plaintiffs pray for relief as set forth below.

## COUNT XII

### COMMON LAW FRAUD
### (All States and the District of Columbia)

197. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

198. Defendants intentionally made materially false and misleading representations regarding the size, amount and contents of the Products. Defendants sold the Products with false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging.

199.     Plaintiffs and members of the Class were induced by, and relied on, Defendants' false and misleading labeling and packaging representations and omissions and did not know at the time that they were purchasing the Products that the Products contained false and misleading representations.

200.     Defendants knew or should have known of their false and misleading labeling, packaging and misrepresentations and omissions. Defendants nevertheless continued to promote and encourage customers to purchase the Products in a misleading and deceptive manner.

201.     Plaintiffs and members of the Class have been injured as a result of Defendants' fraudulent conduct.

202.     Defendants are liable to Plaintiffs and members of the Class for damages sustained as a result of Defendants' fraud, in an amount to be determined at trial.

## COUNT XIII

### UNJUST ENRICHMENT
### (All States and the District of Columbia)

203.     Plaintiffs reallege and incorporate by reference the above paragraphs as if set forth herein and further allege the following:

204.     Plaintiffs bring this claim individually and on behalf of the nationwide Class.

205.     Plaintiffs are entitled, under Rule 8(d), to plead unjust enrichment as an alternative theory of liability. *See St. John's Univ., New York*, 757 F. Supp. 2d. at 183-84 (E.D.N.Y. 2010).

206.     Defendants misled consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products' packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

207. As a result of Defendants' deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Products, Defendants were enriched, at the expense of Plaintiffs and members of the Class, through the payment of the purchase price for Defendants' Products.

208. Plaintiffs and members of the Class conferred a tangible benefit on Defendants, without knowledge that the Products contained false net weight statements and non-functional slack-fill. Defendants accepted and retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class with full knowledge and awareness of that, as a result of Defendants' unconscionable wrongdoing, Plaintiff and members of the Class were not receiving the Products as they had been represented by Defendants, and which reasonable consumers would have expected.

209. Defendants will be unjustly enriched if they are allowed to retain the non-gratuitous benefits conferred by Plaintiffs and members of the Class, and each Class member is entitled to an amount equal to the amount they enriched Defendants and for which Defendants have been unjustly enriched.

210. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that it received from Plaintiffs and the Class, in light of the fact that the net weight and volume of the Products purchased by Plaintiffs and members of the Class, was not what Defendants purported it to be by their labeling and packaging. Thus, it would be unjust or inequitable for Defendants to retain the benefit without restitution to Plaintiffs and the Class, of compensation proportionate to the shortfall in the amount of deodorant/antiperspirant which Plaintiffs and the Class thought they would receive, but did not, based on the purchase price of the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

A. For an Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

A. For an order certifying the New York Class, appointing Plaintiffs O'CONNOR and SZETO representatives of the New York Class, and designating their counsel as counsel for the New York Class;

B. For an order certifying the New Jersey Class, appointing Plaintiff ROSADO representative of the New Jersey Class, and designating his counsel as counsel for the New Jersey Class;

C. For an order certifying the California Class, appointing Plaintiffs DRAEGER and STOVALL representatives of the California Class, and designating their counsel as counsel for the California Class;

D. For an order certifying the Florida Class, appointing Plaintiffs CONTINO and FISHER representatives of the Florida Class, and designating their counsel as counsel for the Florida Class;

E. For an order certifying the Pennsylvania Class, appointing Plaintiff BRINKLEY representative of the Pennsylvania Class, and designating his counsel as counsel for the Pennsylvania Class;

F. For an order certifying the Arkansas Class, appointing Plaintiff MAEWEATHER representative of the Arkansas Class, and designating his counsel as counsel for the Arkansas Class;

G. For an Order declaring the Defendants' conduct violates the statutes referenced herein;

H. For an Order finding in favor of Plaintiffs and the nationwide Class;

I. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

J. For prejudgment interest on all amounts awarded;

K. For an Order of restitution and all other forms of equitable monetary relief;

L. For injunctive relief as pleaded or as the Court may deem proper;

M. For an Order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

N. For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, on behalf themselves and all others similarly situated, hereby demand a jury trial on all claims so triable.

Dated: February 26, 2015

<div style="margin-left:40%">

**Respectfully submitted,**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
ShanShan Zheng (SZ 3301)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

____/s/ C.K. Lee_____
BY: C.K. Lee, Esq.

</div>