**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                               :

MICHAEL O'CONNOR,                   :   1:14-cv-05547-ARR-MDG
JOHNNY SZETO,                    :
ANTONIO ROSADO,               :
RICHARD DRAEGER,              :   **ECF CASE**
MICHAEL STOVALL,               :
DEBRA CONTINO,                :
GEORGE FISHER,                 :
RONALD BRINKLEY,             :
HERBERT MAEWEATHER, *on behalf of*  :
*themselves and others similarly situated*, :
                                                                :
                         Plaintiffs,       :
                                                                  :
                      v.               :
                                                                   :
HENKEL CORPORATION and         :
DIAL CORPORATION,              :
                                                            :
                      Defendants.    :
                                                                 :
-------------------------------------------------------------X


**DEFENDANTS HENKEL CORPORATION AND DIAL CORPORATION'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT ..................................................................................................................... 4

I.      PLAINTIFFS' "USABLE NET WEIGHT" CLAIMS ARE PREEMPTED
        AND FAIL TO STATE A CLAIM .............................................................................. 7

        A.      Plaintiffs' "Usable Net Weight Claims Are Preempted Because They
                Seek to Impose a Disclosure Requirement That Is Different from or in
                Addition to That Which Is Imposed by the FDCA ............................................ 7

        B.      Even if Not Preempted, Plaintiffs' Usable Net Weight Claims Fail to
                State a Claim ...................................................................................................... 9

II.     PLAINTIFFS' TOTAL NET WEIGHT CLAIMS ARE MERITLESS
        BECAUSE THEY ALLEGE MINOR WEIGHT VARIANCES WELL
        WITHIN THE RANGE PERMITTED BY FEDERAL AND STATE LAW ............ 10

III.    PLAINTIFFS' SLACK-FILL CLAIMS ARE BOTH PREEMPTED AND
        MERITLESS .............................................................................................................. 13

IV.     PLAINTIFFS' ARKANSAS, CALIFORNIA, FLORIDA, NEW JERSEY,
        AND NEW YORK CLAIMS ARE BARRED BY APPLICABLE STATE-
        LAW SAFE HARBORS, AND ALL OF PLAINTIFFS' WARRANTY
        CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ....... 16

V.      PLAINTIFFS LACK STANDING TO SEEK AN INJUNCTION BECAUSE
        THEY CANNOT ALLEGE A THREAT OF FUTURE HARM ............................... 18

VI.     COUNTS 11 AND 12 FAIL TO STATE CLAIMS FOR NEGLIGENT
        MISREPRESENTATION AND COMMON-LAW FRAUD ..................................... 19

        A.      Negligent Misrepresentation .............................................................................. 20

        B.      Common-Law Fraud .......................................................................................... 21

VII.    COUNT 13 FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ............ 23

CONCLUSION ................................................................................................................. 25

ACTIVE 207325722v.5

# TABLE OF AUTHORITIES

## CASES

*Adrianne Roggenbuck Trust v. Dev. Resources Grp.*,
  505 F. App'x 857 (11th Cir. 2013) ...................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................... 5, 11-12, 23

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)....................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................5

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) .............................................................................23

*Blaize-Sampeur v. McDowell*,
  No. 05-CV-4275 (JFB) (ARL), 2006 WL 3903957 (E.D.N.Y. Oct. 18, 2006)................. 22-23

*Bowling v. Johnson & Johnson*,
  No. 14-cv-3727, 2014 WL 5643955 (S.D.N.Y. Nov. 4, 2014)..........................................4, 14

*Carter v. Novartis Consumer Health, Inc.*,
  582 F. Supp. 2d 1271 (C.D. Cal. 2008) .................................................................17

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) ....................................................................................23, 24

*City of Los Angeles v. Lyons*,
  461U.S. 95 (1983)..........................................................................................18

*Curtis Lumber Co. v. Louisiana Pac. Corp.*,
  618 F.3d 762 (8th Cir. 2010) .............................................................................10

*Del Real, LLC v. Harris*,
  966 F. Supp. 2d 1047 (E.D. Cal. 2013).................................................................14

*DiCarlo v. St. Mary Hosp.*,
  530 F.3d 255 (3d Cir. 2008)................................................................................23

*Doe v. Gangland Productions, Inc.*,
  730 F.3d 946 (9th Cir. 2013) .............................................................................21

*Durst v. Milroy Gen. Contracting, Inc.*,
  52 A.3d 357 (Pa. Super. 2012).............................................................................23

*Ebner v. Fresh*,
  No. 13-cv-00477, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013) .................................. *passim*

*El Paso Production Co. v. Blanchard*,
  371 Ark. 634, 269 S.W.3d 362 (2007)...................................................................23

*Emigrant Bank v. UBS Real Estate Sec., Inc.*,
  49 A.D.3d 382, 854 N.Y.S.2d 39 (1st Dep't 2008) ................................................21

ACTIVE 207325722v.5

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)............................................................................9

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)...........................................................................22

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ...........................................................................10

*Glenn K. Jackson Inc. v. Roe*,
  273 F.3d 1192 (9th Cir. 2001) (California).....................................................20

*Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*,
  273 F.3d 509 (2d Cir. 2001)...........................................................................23

*Green v. Morgan Properties*,
  215 N.J. 431, 73 A.3d 478 (2013)..................................................................20

*H&R Project Assocs., Inc. v. City of Syracuse*,
  289 A.D.2d 967, 737 N.Y.S.2d 712 (4th Dep't 2001) ..........................................21

*Halper v. Jewish Family & Children's Serv. of Greater Philadelphia*,
  600 Pa. 145, 963 A.2d 1282 (2009) ...............................................................20

*Hunt v. U.S. Tobacco Co.*,
  538 F.3d 217 (3d Cir. 2008)...........................................................................21

*Ittleson v. Lombardi*,
  193 A.D.2d 374 (1st Dep't 1993) ...................................................................22

*Johnson v. ACC1 LLC*,
  No. 12-cv-143, 2014 WL 1369380 (E.D. Ark. Apr. 7, 2014)...............................24

*Johnson v. Monsanto Chem. Co.*,
  129 F. Supp. 2d 189 (N.D.N.Y. 2001) ...................................................... 17-18

*Kirby McInerney & Squire, LLP v. Hall Charne Burce & Olson, S.C.*,
  790 N.Y.S.2d 84 (2005)..................................................................................24

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006)...........................................................................19

*Licul v. Volkswagen Grp. of Am., Inc.*,
  No. 13-cv-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)............................24

*Locantore v. Hunt*,
  775 F. Supp. 2d 680 (S.D.N.Y. 2011)............................................................5-6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)......................................................................................18

*Manti's Transp., Inc. v. C.T. Lines, Inc.*,
  68 A.D.3d 937, 892 N.Y.S.2d 432 (2d Dep't 2009) ..........................................20

*Mennen Co. v. Gillette Co.*,
  565 F. Supp. 648 (S.D.N.Y.1983), *aff'd* 742 F.2d 1437 (2d Cir.1984)................16

*Mergens v. Dreyfoos*,
   166 F.3d 1114 (11th Cir. 1999) ................................................................21

*Merle Wood & Assocs. v. Trinity Yachts, LLC*,
   714 F.3d 1234 (11th Cir. 2013) ...............................................................23

*N.J. Citizen Action v. Schering-Plough Corp.*,
   842 A.2d 174 (N.J. Super. App. Div. 2003) .............................................17

*Ogden v. Bumble Bee Foods, LLC*,
   No. 12-cv-1828, 2014 WL 27527 (N.D. Cal. Jan. 2, 2014)......................24

*Osorio v. State Farm Bank, F.S.B.*,
   746 F.3d 1242 (11th Cir. 2014) ...............................................................20

*Premium Mortg. Corp. v. Equifax, Inc.*,
   583 F.3d 103 (2d Cir. 2009).....................................................................21

*S. Cnty., Inc. v. First W. Loan Co.*,
   315 Ark. 722, 871 S.W.2d 325 (1994)......................................................20

*Samiento v. World Yacht Inc.*,
   883 N.E. 2d 990 (N.Y. 2008)....................................................................25

*Scott v. KeyCorp*,
   247 A.D.2d 722, 669 N.Y.S.2d 76 (3d Dep't 1998) .................................20

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994)............................................................... 19-20

*Slapikas v. First Am. Title Ins. Co.*,
   298 F.R.D. 285 (W.D. Pa. 2014) ..............................................................10

*Stokes v. Lusker*,
   No. 08 Civ. 3667 (CM), 2009 WL 612336 (S.D.N.Y. Mar. 4, 2009)........6

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*,
   245 A.D.2d 96 (1st Dep't 1997) ...............................................................10

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011) .............................................................10

*Tomasino v. Estee Lauder Companies Inc.*,
   No. 13–CV–4692 (ERK) (JMA),
   2014 WL 4244329 (E.D.N.Y. Aug. 26, 2014).........................................18

*Turek v. Gen. Mills. Inc.*,
   662 F.3d 423 (7th Cir. 2011) .....................................................................4

*Vaccariello v. XM Satellite Radio, Inc.*,
   295 F.R.D. 62 (S.D.N.Y. 2013) ...............................................................19

*Van Orman v. Am. Ins. Co.*,
   680 F.2d 301 (3d Cir. 1982) (New Jersey) ..............................................24

*Venditto v. Vivint, Inc.*,
   No. 14-cv-4357, 2015 WL 926203 (D.N.J. Mar. 2, 2015) .......................10

iv

*Verzani v. Costco Wholesale Corp.*,
　No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010),
　*aff'd* 432 F. App'x 29 (2d Cir. 2011) ............................................................. 7-8, 14

*Welchert v. Am. Cyanamid Inc.*,
　59 F.3d 69 (8th Cir. 1995) ............................................................................... 18

*Williams v. BASF Catalysts LLC*,
　765 F.3d 306 (3d Cir. 2014) ............................................................................ 21

*Wood v. Applied Research Assocs.*,
　328 Fed. App'x. 744 (2d Cir. 2009) ................................................................ 19

*Wu v. Dunkin' Donuts, Inc.*,
　105 F. Supp. 2d 83 (E.D.N.Y. 2000),
　*aff'd* 4 F. App'x 82 (2d Cir. 2001) ................................................................. 20

**CONSTITUTION & STATUTES**

3 Pa. C.S.A. § 4117 .......................................................................................... 12

15 U.S.C. § 1454 ............................................................................................... 13

15 U.S.C. § 1461 ........................................................................................... 4, 8

21 U.S.C. § 321 .................................................................................................. 4

21 U.S.C. § 352 ............................................................................................... 11

21 U.S.C. § 362 ............................................................................................... 11

21 U.S.C. § 379r ....................................................................................... 4, 8, 13, 14

21 U.S.C. § 379s ....................................................................................... 4, 8, 13, 14

Ark. Code Ann. § 4-88-101 ............................................................................. 17

Cal. Bus. & Prof. Code § 12211 ...................................................................... 12

Fla. Stat. § 501.212 .......................................................................................... 17

Fla. Stat. § 531.41 ............................................................................................ 12

N.Y. Agric. & Mkts. L. § 221.11 ..................................................................... 12

N.Y. Gen. Bus. L. § 349 ........................................................................... 3, 16-17

N.Y. Gen. Bus. L. § 350 .................................................................................... 3

U.S. Const. art. VI, cl. 2 ................................................................................... 14

**REGULATIONS & RULES**

21 C.F.R. § 100.100 ....................................................................................... 2, 3

21 C.F.R. § 201.62 .................................................................................... *passim*

21 C.F.R. § 350.1–3 ......................................................................................... 4, 8

21 C.F.R. § 701.13 .................................................................................... *passim*

Fed. R. Civ. P. 9 ............................................................................................... 19

ACTIVE 207325722v.5

Fed. R. Civ. P. 12 ..................................................................................................................5

N.J. Admin. Code tit. 13 § 47K-5.2 ....................................................................................12

**OTHER AUTHORITIES**

*Black's Law Dictionary* (10th ed. 2014) .................................................................... 9-10

Standards and Technology, *NIST Handbook 133: Checking the Net Contents of Packaged Goods*, app. A, tbl. 2-5, *available at*
http://www.nist.gov/pml/wmd/pubs/upload/h133-2015-web-final.pdf ..............................6, 12

ACTIVE 207325722v.5

## PRELIMINARY STATEMENT

Defendants Dial Corporation and Henkel Corporation submit this memorandum of law in support of their motion for an order dismissing Plaintiff's First Amended Complaint ("FAC"). As shown below, Plaintiffs' claim—that they were misled concerning the amount of antiperspirant deodorant in Right Guard products—fails to provide sufficient support for any of the causes of action alleged in the Complaint:  a violation of the consumer fraud statutes of the six states in which plaintiffs reside and various common law claims.

Plaintiffs do not dispute that they received what they paid for—2.6 or 3 ounces of antiperspirant deodorant.  No reasonable consumer would be deceived as to the actual quantity of the product, which was clearly and prominently displayed on the product label.  Indeed, plaintiffs themselves concede that they relied on the stated net weight disclosures on the product labels in determining the amount of product they were purchasing.  Plaintiffs nevertheless seek to argue that the product is "misbranded" under the Food, Drug and Cosmetic Act ("FDCA") because the product container has some "nonfunctional slack fill," or empty space, but their "misbranding" theory fails to support a claim for three basic reasons. First, there is no private right of action under the FDCA.  Second, even if there were, their theory overlooks the fact that the Food and Drug Administration ("FDA") has decided not to promulgate "nonfunctional slack fill" regulations for cosmetics and over-the-counter ("OTC") drugs, such as antiperspirant deodorant. Third, their efforts to impose requirements different from those imposed by FDA are preempted by the FDCA.

Plaintiffs also seek to advance two other theories, arguing that the products do not in fact have the stated net weight and that in any event the stated net weight is misleading because it is greater than the "usable" net weight.  Neither theory bears any scrutiny.  The net weight theory fails because it is based on trivial variances, if any, between the stated net weight and the alleged

1

net weight—differences that not only fail to support a claim of a material misrepresentation, but cannot support a claim in view of federal and state regulations authorizing much greater variances.  The "usable" net weight theory is plainly preempted by federal law prescribing how net weight is to be calculated and displayed on the product label.

In a word, plaintiffs have no claim against Defendants for their product purchases.  The products prominently disclosed their contents on the product labels, which plaintiffs concede having relied on to assess how much product they were purchasing.  Because the disclosures complied with federal regulations, plaintiffs are barred by preemption from seeking to impose additional or different requirements on Defendants.  And because the disclosures were accurate, they could not be misleading to any reasonable consumer.  Plaintiffs received exactly what the product labels prominently disclosed.

## STATEMENT OF FACTS

Defendants Dial Corporation and Henkel Corporation manufacture a wide array of consumer products, including (as relevant here) Right Guard antiperspirant and deodorant.  (FAC ¶¶ 1, 23-26).  Plaintiffs are residents of six states—Arkansas, California, Florida, New Jersey, New York, and Pennsylvania—who claim to have purchased a Right Guard antiperspirant product.  Seven of the plaintiffs allegedly purchased a Right Guard "Total Defense 5" product. (*Id.* ¶¶ 14-17, 19, 20, 22.)  The other two plaintiffs allegedly purchased a Right Guard "Xtreme Fresh" product.  (*Id.* ¶¶ 18, 22.)

In the first iteration of this Complaint, Adam Stoltz, the then-named plaintiff— conspicuously absent from the suit post-"amendment"—sought relief under New York law alone and based his claim primarily on the allegation that Defendants' Right Guard dispensers are slack-filled—*i.e.*, contain empty internal space—in alleged violation of the FDA's regulations for *food* packaging: 21 C.F.R. § 100.100.  (Compl. ¶¶ 23-25, 66-68).  That practice, the

2

complaint asserted, violated New York General Business Law sections 349 and 350.  *Id.* ¶¶ 61-75.[1]

In plaintiffs' First Amended Complaint ("FAC"), they assert that the Right Guard product purchased was deceptive and misleading to consumers in three discrete ways:  (1) it contains "non-functional slack-fill," leading consumers to believe that its dispenser contains more product than it actually does (FAC ¶¶ 45-50); (2) Right Guard's label overstates the product's actual net weight (total weight minus the weight of its packaging), leading consumers to believe they are purchasing more product than they actually are (*id.* ¶¶ 40-41, 44, Ex. C); and (3) the net weight figures on Right Guard's label are misleading because a portion of the antiperspirant stick cannot be easily deployed from the dispenser (*id.* ¶¶ 42, 44).  Plaintiffs then package these core claims into 13 separate causes of action:  deceptive-trade-practices claims under their respective state laws (Counts 1-5 and 7-9); false advertising (California only) (Count 6); breach of express warranties (Count 10); negligent misrepresentation (Count 11); common-law fraud (Count 12); and unjust enrichment (Count 13).  Plaintiffs also bring this case as a putative nationwide class action, and therefore seek to invoke not only the laws of their respective states but the statutes and common law of all fifty states and the District of Columbia.  (*Id.* ¶¶ 3, 6).

Defendants filed a pre-motion letter, setting forth in brief the grounds for dismissal explicated below.  (D.E.18).  After plaintiffs responded to that letter (D.E. 19), the Court authorized Defendants to file the instant motion to dismiss on or by May 7, 2015.

---

[1] Specifically, 21 C.F.R. § 100.100 states that "a *food* shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.  (a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill.  Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein."  21 C.F.R. § 100.100 (emphasis added).  The regulation then lists several reasons why slack-fill would be deemed functional—and thus not a violation of the food regulations.  *Id.* § 100.100(a)(1)-(6).

**ARGUMENT**

Plaintiffs' claims fail for two fundamental reasons.  ***First***, their claims are preempted by the FDCA and its implementing regulations.   The FDCA contains separate, but virtually identical, preemption clauses for OTC drugs (including antiperspirants[2]) and cosmetics (including deodorants[3]).   *Compare* 21 U.S.C. § 379r (OTC drugs), *with* 21 U.S.C. § 379s (cosmetics).  Under those provisions, any state law that would "establish or continue in effect any requirement for labeling or packaging of a cosmetic *that is different from or in addition to, or that is otherwise not identical with*, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter . . . or the Fair Packaging and Labeling Act ('FPLA'), is preempted."  § 379s.  The FPLA, for its part, contains a similar provision, which preempts state laws that "require information different from" the FLPA or its implementing regulations.  15 U.S.C. § 1461.

As other courts in this Circuit have explained in holding deceptive-practices claims preempted by the FDCA:

> "The standard, in other words, is not whether a state law actively undermines federal law.  It is whether state law diverges from federal law *at all*.  In settings '[w]here federal requirements address the subject matter that is being challenged through state law claims . . . the state requirements are not permitted unless they are *identical* to federal standards.'"

*Bowling v. Johnson & Johnson*, No. 14–cv–3727, 2014 WL 5643955, at *2 (S.D.N.Y. Nov. 4, 2014) (emphasis in original).  In other words, "consistency is not the test, identity is." *Turek v. Gen. Mills. Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).

---

[2] 21 C.F.R. § 350.1–3.

[3] 21 U.S.C. § 321(i).  Products such as those here, "deodorants which are also antiperspirants," are both an OTC drug and cosmetic. *See* http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm.

Although plaintiffs package their basic contention several different ways, the gravamen of their complaint is that Defendants' products violate state law because—although Right Guard's labels provide all quantity-of-product information required by federal law (net weight), calculate that figure using the formula prescribed by federal law (total weight minus weight of packaging) and with the degree of precision required by the applicable federal guidance (+/- 7.2% of stated net weight), and express that quantity-of-product figure in the manner and units required by federal law (weight in ounces)—they do not supply *additional* information about the products' contents that is *not* required by federal law.   That is the archetype of a preempted claim.

***Second***, plaintiffs' allegations—even taken as true and viewed in the most favorable light—fail to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  As the Supreme Court has repeatedly emphasized, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Moreover, in assessing plausibility, the court does not accept as true any allegations in the complaint that are, in substance, nothing more than legal conclusions.  *Id.*

Judged by these standards, plaintiffs' net-weight and slack-fill claims fail as a matter of law because they do not rest on sufficient allegations of *fact*.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) ("[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555); *Locantore v. Hunt*, 775 F.

Supp. 2d 680, 685 (S.D.N.Y. 2011) ("On motion to dismiss for failure to state a claim, plaintiff must allege enough facts to state a claim to relief that is plausible on its face; if plaintiff has not nudged his claims across the line from conceivable to plausible, his complaint must be dismissed.") (quoting *Iqbal*, 556 U.S. at 679).

Consider, in this regard, plaintiffs' total-net-weight claims. They allege that two Right Guard "Xtreme Fresh" products contain "only" 98.08% of the 2.6 ounces of antiperspirant described on the products' labels. FAC Ex. D, rows 1-2. Plaintiffs say nothing, however, about how they calculated this figure, what method they used to (allegedly) extract every last iota of product from the packaging in order to perform their tests (after all, every scrap left in the packaging would add credence to plaintiffs' claim that Right Guard is short-weighted), how many times they performed their test, etc. Nor do they explain why this alleged 1.92 percent shortfall is unlawful, given that applicable regulatory guidance permits variances more than *three times as large*. *See* National Institute of Standards and Technology, *NIST Handbook 133: Checking the Net Contents of Packaged Goods*, app. A, tbl. 2-5, *available at* http://www.nist.gov/pml/wmd/pubs/upload/h133-2015-web-final.pdf (permitting variance of up to 0.1875 oz. for products with net weight of 2.6 oz.). Similar errors infect all of plaintiffs' claims, and all of them should be dismissed.[4]

Indeed, in seeking to assert "usable net weight" and "net weight" claims, plaintiffs make an admission fatal to their "nonfunctional slack fill" claim: "In making their purchases, Plaintiffs and Class members relied on the net weight listed on the Product labels in evaluating how much

---

[4] In deciding a Rule 12(b)(6) motion, a "court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Stokes v. Lusker*, No. 08 Civ. 3667 (CM), 2009 WL 612336, at *3-4 (S.D.N.Y. Mar. 4, 2009) (collecting cases). In this instance, as Plaintiffs repeatedly refer to and purportedly rely on statements made on the labels of various Right Guard products, the labels may properly be considered in connection with the instant Motion to Dismiss.

deodorant/antiperspirant was in the Products."  (FAC ¶ 52.)  To the extent plaintiffs so relied on the net weight disclosure as the measure of "how much deodorant/antiperspirant was in the Product," the Plaintiffs acted as reasonable consumers would act.  Seven of the nine plaintiffs do not allege any variation between the stated net weight and actual net weight of the Right Guard product purchased ("Total Defense 5") (*id.* ¶¶ 14-17, 19, 20, 22), and the other two plaintiffs purchased products (Right Guard "Xtreme Fresh") for which they allege only *de minimis* variations, far short of any difference that would state a claim (*id.* ¶¶ 18, 22, Ex. D, rows 1-2). By their own admission, Plaintiffs received what they paid for and have no claim against Defendants.

## I.   PLAINTIFFS' "USABLE NET WEIGHT" CLAIMS ARE PREEMPTED AND FAIL TO STATE A CLAIM

### A.   Plaintiffs' "Usable Net Weight Claims Are Preempted Because They Seek to Impose a Disclosure Requirement That Is Different from or in Addition to That Which Is Imposed by the FDCA

Plaintiffs' claims regarding the products' "usable net weight" are preempted by the FDCA and its implementing regulations.  Those regulations require *only* that "[t]he label of a cosmetic in package form shall bear a declaration of the *net quantity of contents*," 21 C.F.R. § 701.13(a) (emphasis added), a term which the regulations define as "the quantity of cosmetics in the package exclusive of wrappers and other material packed therewith," *id.* § 701.13(g); *see also id.* § 201.62(a) & (f) (same for over-the-counter drugs).  The regulations also state that the required quantification "shall be in terms . . . of weight if the cosmetic is solid, semisolid, or viscous, or a mixture of solid and liquid."  21 C.F.R. § 701.13(a).  *See Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499, at *2 (S.D.N.Y. Sept. 28, 2010) ("net weight means the weight of an item exclusive of its packaging"), *aff'd* 432 F. App'x 29, 2011

WL 4359936, at *2 (2d Cir. Sept. 20, 2011).  The same rules apply to OTC drugs.  *See* 21 C.F.R. § 201.62(a), (f).

Plaintiffs, however, demand more.  Although Right Guard indisputably contains all of the required disclosures and presents them in the methods prescribed by the applicable regulations (*see* FAC ¶¶ 40-44), plaintiffs nonetheless contend that those disclosures are materially misleading—and thus legally inadequate—under *state* law because Right Guard's dispenser is allegedly filled in such a way that it prevents users from easily accessing a portion of the 2.6 ounces of product it contains.  (FAC ¶¶ 40-41).  In other words, plaintiffs "usable net weight" claim seeks to have this Court engraft an additional, state-law requirement on top of those prescribed by the FDCA.

In addition, it should be noted that Congress has also decided that it is the Secretary of Health and Human Services (who oversees the FDA) who is to "determine[] that regulations containing prohibitions or requirements other than those prescribed by … this title are necessary to prevent the deception of consumers or to facilitate value comparisons as to any consumer commodity."  15 U.S.C. § 1454(a), (c); *cf.* 21 C.F.R. § 701.13(c) ("When the declaration of quantity of contents by numerical count, linear measure, or measure of area does not give accurate information as to the quantity of cosmetic in the package, it shall be augmented by such statement of weight, measure, or size of the individual units or the total weight or measure of the cosmetic as will give such information.").  Taken together, the import of sections § 379r (preemption for OTC drug requirements), § 379s (preemption for cosmetics requirements), and § 1454 is clear:  The judgment as to what packaging features and labeling details are required to protect consumers is a judgment reserved to the FDA and Congress—not the States.

Consequently, unless and until Congress or the FDA acts to add a requirement of "usable net weight," any state-law requirement of such a disclosure is preempted.

The closest case on point arises out of the Central District of California:  *Ebner v. Fresh*, No. 13-cv-00477, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013).  In that case, the plaintiffs alleged that the label for Sugar Lip Balm did not disclose the "reasonably accessible" weight of the product and therefore was misleading, deceptive, and otherwise illegal under California law. As the court there observed, "Plaintiff's state law claims necessarily argue that either (1) Defendant's Sugar label should include supplemental language regarding the quantity that is 'reasonably accessible' to consumers through direct application to the lips; or (2) 'net quantity' should be measured as the quantity that is 'reasonably accessible' to consumers through direct application to the lips." *Id.* at *6.  Either argument, the court concluded, "would impose requirements that are 'different' or 'in addition' to the FDA regulations." *Id.*  As a result, the court held the plaintiff's claims preempted.  *Id.*

So too here.  Plaintiffs would have this Court hold that the laws of six states compel Defendants to either provide an *extra* disclosure (of usable net weight) or *change* the way they calculate "net quantity of contents" for their Right Guard products.  Either option would depart from the requirements imposed by federal law, and so both are preempted.

> **B.    Even if Not Preempted, Plaintiffs' Usable Net Weight Claims Fail to State a Claim**

Plaintiffs also fail to state a plausible claim for relief under any of the consumer-protection statutes they attempt to invoke.  First, it bears emphasis that the standard against which plaintiffs' claims must be judged is what a "*reasonable consumer* acting *reasonably* under the circumstances" would know, expect, and do.  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (emphasis added) (applying New York law); *accord Black's Law Dictionary* (10th

ed. 2014) (defining "deceptive act":  "As defined by the Federal Trade Commission and most state statutes, conduct that is likely to deceive a consumer *acting reasonably under similar circumstances*" (emphasis added).[5]

No reasonable consumer would claim to have been deceived upon learning that she would likely not be able to deplete literally every last scrap of a product she purchased.  From toothpaste tubes to soap dispensers to lip balm, it is utterly commonplace and universally understood that some fraction of a consumer product may not be reasonably accessible to users. *See Ebner*, 2013 WL 9760035, at *7-8.

In sum, because Plaintiffs allege no facts showing that a reasonable consumer engaging in reasonable consumptive behavior would be misled by the usable quantity of Defendants' products, their usable net weight claims must be dismissed.

## II.     PLAINTIFFS' TOTAL NET WEIGHT CLAIMS ARE MERITLESS BECAUSE THEY ALLEGE MINOR WEIGHT VARIANCES WELL WITHIN THE RANGE PERMITTED BY FEDERAL AND STATE LAW

As noted above, the FDCA requires that the label on cosmetics and OTC drugs contain an accurate statement of the "net quantity" of those products' containers, and that that quantity be expressed in terms of pounds and ounces.  21 C.F.R. §§ 201.62(a), (f), 701.13(a), (g).  Federal

---

[5] The consumer protection statutes for relevant states in addition to New York also apply the  "reasonable consumer" standard. *See, e.g.*, *Curtis Lumber Co. v. Louisiana Pac. Corp.*, 618 F.3d 762 (8th Cir. 2010) (claimant under Arkansas Deceptive Trade Practices Act must prove that challenged conduct has capacity to deceive a reasonable consumer); *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011) ("[Plaintiff's] claims under California's consumer protections laws are evaluated under a 'reasonable consumer' standard."); *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (noting that California courts have looked to FTC "reasonable consumer" standard, rejecting the plaintiff's "unwary consumer" standard); *Adrianne Roggenbuck Trust v. Dev. Resources Grp.*, 505 F. App'x 857, 862 (11th Cir. 2013) (stating that under Florida's deceptive-practices law, the plaintiff must "prove that an objective reasonable person would have been deceived" (quoting *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011))); *cf. Venditto v. Vivint, Inc.*, No. 14-cv-4357, 2015 WL 926203, at *13 (D.N.J. Mar. 2, 2015) (noting that, under New Jersey's unfair-competition law, "a plaintiff must demonstrate that the business behavior in question 'stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer'" (quoting *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 655 A.2d 417, 430 (1995))); *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014) (stating that, to establish liability under the "'unfair or deceptive acts or practices'" prong of Pennsylvania's unfair trade practices law, a plaintiff must prove, *inter alia*, "a deceptive act that is likely to deceive a reasonable consumer acting reasonably under similar circumstances" (quoting 73 Pa. Stat. § 201–9.2)).

law also states, however, that "reasonable variations" from cosmetics-labeling requirements "shall be permitted . . . by regulations prescribed by the Secretary."  21 U.S.C. § 362(b).  Those regulations, in turn, provide that "variations from stated quantity of contents shall not be *unreasonably large*."  21 C.F.R. § 701.13(s) (emphasis added); *see also* 21 U.S.C. § 352; 21 C.F.R. § 201.62(q) (same for OTC drugs).  Plaintiffs' allegations, even taken as true, fail to establish any such variation.

In Exhibit D to their complaint, plaintiffs claim to set forth variances for eight Right Guard products.  FAC Ex. D.  But only two of the products are among those allegedly purchase by any plaintiff:  Right Guard "Xtreme Fresh."  *See* FAC ¶¶ 14-22; *id.* Ex. D, rows 1-2.[6]  In the case of those products, however, plaintiffs allege a variance of only 0.05 ounces, or 1.92% of the products' stated net weight of 2.6 ounces.  *Id.* Ex. D, rows 1-2.  Even apart from the regulatory guidance on weights and measures, there is simply no basis for concluding that a variance of less than two percent is "unreasonably large."  In addition, plaintiffs' failure to plead *any* facts regarding their method for calculating the total net weight of the product in question is fatal to any *Twombly/Iqbal* assessment of its allegations, even if they had alleged an arguably "large variance."[7]

Plaintiffs are not entitled to place any figurers on a table and insist that they grant plaintiffs access to the treasure trove of civil discovery.  Rather, plaintiffs must allege *concrete* facts that, if proved to be true, would *plausibly* show their entitlement to relief.  *See Iqbal*, 556

---

[6] Seven of the plaintiffs allege having purchased Right Guard "Total Defense 5" products, for which no variation at all from the stated net weight is alleged.

[7] Plaintiffs' silence prompts many basic questions.  Did they obtain unfilled packaging from the manufacturer or other source and subtract its weight from the weight of a filled product purchased off the shelf?  Did they scrape out every visible speck of antiperspirant and somehow ensure that not even a fraction of an ounce was left on *any* surface of the deodorant dispenser?  How many times did plaintiffs perform this exercise (in order to confirm the accuracy of their calculations)?

ACTIVE 207325722v.5

U.S. at 678.  The exercise plaintiffs claim to have engaged in—separating out deodorant from the plastic dispenser to which it was affixed and, by plaintiffs' own admission, with which it was interwoven—was one that, if performed without meticulous care, would support their claim that the product contains less product than its label asserts.  As a result, without at least *some* degree of information on how plaintiffs reached the figures they assert, they cannot as a threshold matter be found to have "'nudg[ed]'" their claims "'across the line from conceivable to plausible."  *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570).

Moreover, and perhaps even more importantly, regulatory guidance promulgated by the Commerce Department's National Institute of Standards and Technology ("NIST") authorizes variances of up to 0.1875 ounces for products with a stated net weight of 2.6 ounces—more than triple the 0.05 ounce variance that plaintiffs allege.  *See* National Institute of Standards and Technology, *NIST Handbook 133: Checking the Net Contents of Packaged Goods*, app. A, tbl. 2-5, *available at* http://www.nist.gov/pml/wmd/pubs/upload/h133-2015-web-final.pdf (permitting variance of up to 0.1875 oz. for products with net weight of 2.6 oz.).  And were that not enough, *each* of the states whose laws plaintiffs' invoke has adopted the NIST standards for evaluating statements of net weight.  Cal. Bus. & Prof. Code § 12211; Fla. Stat. § 531.41; N.Y. Agric. & Mkts. L. § 221.11; N.J. Admin. Code tit. 13 § 47K-5.2; 3 Pa. C.S.A. § 4117; *cf.* http://plantboard.arkansas.gov/Standards/Pages/FrequentlyAskedQuestions.aspx.

Consequently, regardless of whether the NIST Handbook independently supplies a federal safe harbor or merely provides one via incorporation into each of the state laws at issue here, the result is the same:  Even if plaintiffs were correct in the variances they plead, they still would fail to plead an "unreasonably large" variance sufficient to trigger liability.  *See* 21 C.F.R. §§ 201.62(q), 701.13(s).

Moreover, to the extent plaintiffs seek to impose liability not for an "unreasonably large" variance from stated net weight but rather for *any* variance from that stated figure, their claims would be preempted as attempts to impose requirements that are "different from" and "in addition to" those prescribed by federal law.  *See* 21 U.S.C. §§ 379r, 379s; Section I.A, *supra*.

## III.   PLAINTIFFS' SLACK-FILL CLAIMS ARE BOTH PREEMPTED AND MERITLESS

In the FAC, plaintiffs allege, in sum and substance, that Right Guard's packaging is materially misleading because its internal space is not 100 percent filled with product.  But federal law imposes no such requirement on cosmetics and OTC drugs.  Congress and the FDA have determined that the way to ensure consumers are not misled, and to ensure that consumers possess sufficient information to perform accurate value comparisons, is to require that all OTC drugs and cosmetics disclose the products' *net weight*.  *See Ebner*, 2013 WL 9760035, at *5 ("[B]oth the FDA and the California legislature have decided that consumers will be adequately protected if a cosmetic label provides the net quantity of contents in accordance with the statutory requirements.").

Indeed, as discussed above, Congress has given the FDA express authority to promulgate nonfunctional slack-fill regulations for OTC drugs and cosmetics if the agency "determines that regulations containing prohibitions or requirements . . . are necessary to prevent the deception of consumers or to facilitate value comparisons as to any consumer commodity."  15 U.S.C. § 1454(a), (c).  With this clear allocation of rulemaking power over the precise question at issue here—whether additional slack fill-related requirements are needed to prevent deception of consumers—the FDA has chosen not to promulgate any "regulations containing prohibitions or requirements" for either OTC drugs or cosmetics.  Instead, it has exercised that authority only with respect to *food* products.

13

That decision is telling:  the FDA has opted to regulate slack-fill for one class of products within its jurisdiction, but not for the classes of product at issue here.  Plaintiffs seek to have this Court override that decision by (in essence) adopting the federal food regulations as the *state* law governing the advertising and sale of cosmetics and OTC drugs.  That effort, however, must fail. *See* U.S. Const. art. VI, cl. 2; 21 U.S.C. §§ 379r, 379s; *Bowling*, 2014 WL 5643955, at *2 ("state law claims that depart in any way from FDA regulation . . . are expressly preempted"); *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1056-57, 1064 (E.D. Cal. 2013) (holding that California slack-fill regulations were preempted because, whereas "the [California statute] prohibits nonfunctional slack-fill in packages, [that] prohibition . . . is simply non-existent under federal law").

In addition, Plaintiffs fail to plead facts plausibly showing that Right Guard's packaging was likely to mislead a reasonable consumer.  Two recent cases illustrate this point.  In the first of these, *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), the plaintiff alleged that a reasonable consumer would be deceived by the "net weight" disclosures on a "Shrimp Tray with Cocktail Sauce" product sold at Costco. Specifically, the plaintiff contended that reasonable consumers would believe that the net weight referred only to the weight of the shrimp, and excluded the weight of the cocktail sauce, lemon wedges, and lettuce garnish that together comprised the substance of the product.  *Id.* at *2.  The court disagreed, reasoning that "a reasonable consumer would not read the label as promising that the package contained sixteen ounces of shrimp."  *Id.* (internal quotations omitted).  The Court thus concluded that, "[b]ecause the label accurately states the combined weight of the food in the tray, Verzani's [NY] GBL § 349 claim could not survive a motion to dismiss."  *Id.* at *3.

14

*Ebner v. Fresh, Inc.*, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013), is to similar effect. There, the plaintiff alleged that the defendant's lip balm product "[wa]s marketed in 'vastly oversized tubes and boxes, making them appear to a reasonable consumer as if they contain a far larger quantity of lip balm product than they actually contain." *Id.* at *7. The court rejected that argument, deeming the product not misleading because "the tube contains the amount of product stated on the label," and that, "in light of [the product's] label, which accurately states the net quantity of product in the tube, it is not reasonable to infer that the oversized packaging and metallic weight would mislead reasonable consumers as to the quantity they are receiving." *Id.* (footnote omitted).

Plaintiffs' claims must likewise fail, because, as in *Verzani* and *Ebner*, a reasonable consumer would understand—based on the fact that *all* quantity disclosures for solid deodorant and antiperspirant products sold in the United States, regardless of manufacturer, brand, or point of sale, are made in terms of *net weight*, not volume—that the only reliable way to perform value comparisons across products was by comparing those net weights.

Even more fundamentally, a reasonable consumer would comprehend—based on the label's disclosure of a net weight of 2.6 or 3.0 ounces (depending on the product)—that he or she was purchasing *2.6 or 3.0 ounces of product*. Any suggestion that a consumer would be misled by these simple, straightforward disclosures ignores the governing "reasonable consumer" standard and cannot be sustained. *See supra* note 5; *cf. Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 98-99 (1st Dep't 1997) ("Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations[.]").  Indeed, the obvious fact that the same size packaging can and does hold different amounts of product, *see*

FAC ¶¶ 45-46, precludes any claim that a reasonable consumer would believe that the size of the container precisely determines the amount of the product.  As plaintiffs allege, *see id.*, Defendants' 3.0 ounce Right Guard products makes this fact explicit by disclosing that it contains "15% MORE" deodorant/antiperspirant than does the 2.6 ounce product that is sold in the same-sized dispenser.  Moreover, plaintiffs' effort to apply its "nonfunctional slack fill" theory to Right Guard products is barred by two other core facts:  (1) the fact that the container includes a mechanism by which it dispenses of the product means that there necessarily will be space in the container not filled by product, and (2) the fact that the container also serves as the tool by which the consumer to applies the product means that its function is not limited to holding product. [8]

Given the facts as plaintiffs plead them, they cannot sustain their argument that a reasonable consumer would be misled by Right Guard's packaging and dispenser.

## IV.   PLAINTIFFS' ARKANSAS, CALIFORNIA, FLORIDA, NEW JERSEY, AND NEW YORK CLAIMS ARE BARRED BY APPLICABLE STATE-LAW SAFE HARBORS, AND ALL OF PLAINTIFFS' WARRANTY CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Because Defendants' disclosures are required by—and comply with—federal drug and cosmetic regulations, they fall within the safe harbors under many of the consumer-protection laws Plaintiffs invoke, established either by the explicit terms of the statutes or by case law applying the statutes.  *See, e.g.*, N.Y. GBL § 349(d) ("[I]t shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and

---

[8] Plaintiff's claim resembles the GBL § 349 claim at issue in *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648 (S.D.N.Y.1983), *aff'd* 742 F.2d 1437 (2d Cir.1984).  There, Judge Pollack rejected the claim that Gillette (the producer of Right Guard at that time) violated §349 and the Lanham Act by selling a Right Guard deodorant in a box larger than physically required by the size of the product dispenser/container, because plaintiff "has not shown that the size of the box has any capacity to mislead."  565 F. Supp. at 655.  Similarly, none of plaintiffs' allegations show that the size of the container has any capacity to mislead.  Indeed, Judge Pollack recognized that the size of the container itself, far from providing "nonfunctional" slack fill, served purposes such as "improving the dispensing" of product.  *Id.* at 656.

regulations of, and the statutes administered by . . . any official department, division, commission

or agency of the United States as such rules, regulations or statutes are interpreted by . . . such

department, division, commission or agency or the federal courts."); Fla. Stat. § 501.212(1)

("This part does not apply to . . . An act or practice required or specifically permitted by federal

or state law."); Ark. Code Ann. § 4-88-101(3) ("This chapter does not apply to . . . [a]ctions or

transactions permitted under laws administered by . . . [a] regulatory body or officer acting under

statutory authority of this state or the United States, unless a director of these divisions

specifically requests the Attorney General to implement the powers of this chapter . . . ."); *Ebner*,

2013 WL 9760035, at *4-6 ("Because Defendant's [net-quantity] labeling is permitted and

required conduct under state and federal law, it is entitled to safe harbor . . . . [and thus] cannot

be the basis of liability under the UCL, CLRA, and FAL."); *N.J. Citizen Action v. Schering-*

*Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. App. Div. 2003) (advertising claim "subject to

FDA oversight" is "not actionable" under  New Jersey Consumer Fraud Act).

      Similarly, plaintiffs' warranty claims, *see* FAC ¶¶ 180-182, must fail because "they are

based entirely upon FDA-approved labeling" statements, *Carter v. Novartis Consumer Health,*

*Inc.*, 582 F. Supp. 2d 1271, 1284 (C.D. Cal. 2008)—specifically, the products' net weight,

FAC¶ 180, which is calculated and expressed as required by the applicable FDA regulations, *see*

21 C.F.R. §§ 201.62(a), (f), 701.13(a), (g).  "Claims for breach of warranty based upon these

kinds of statements would impose liability upon Defendants for complying with FDA

regulations, and constitute perhaps the clearest example of state law requirements that differ

from federal requirements."  *Carter*, 582 F. Supp. 2d at 1285; *see also Johnson v. Monsanto*

*Chem. Co.*, 129 F. Supp. 2d 189, 194 (N.D.N.Y. 2001) ("'[T]he rationale that warrantors should

be held to contracts that they voluntarily enter into does not apply when their actions are

forced.'" (quoting *Higgins v. Monsanto Co.*, 862 F. Supp. 751, 761 (N.D.N.Y. 1994)); *cf.*

*Welchert v. Am. Cyanamid Inc.*, 59 F.3d 69, 72-73 & n.6 (8th Cir. 1995) (citing *Worm v. Am.*

*Cyanamid Co.*, 5 F.3d 744 (4th Cir. 1993)) ("A label statement specifically required by FIFRA

and its corresponding federal regulations does not have the contractual quality of an express

warranty.  As noted above, it is in the nature of a mandatory disclosure.  Thus, any

misrepresentation, negligent or otherwise, in such disclosure would therefore sound, if at all, in

tort, not contract.").

## V.   PLAINTIFFS LACK STANDING TO SEEK AN INJUNCTION BECAUSE THEY CANNOT ALLEGE A THREAT OF FUTURE HARM

Plaintiff lacks standing to bring a claim for injunctive relief (Count I) because they do not

and cannot allege a threat of future harm.  To establish Article III standing, a plaintiff must

plausibly allege:  an "injury in fact," "a causal connection between the injury and the conduct

complained of," and that it is likely that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).  When a

plaintiff seeks injunctive relief, the standing requirement "cannot be met where there is no

showing of any *real or immediate threat that the plaintiff will be wronged again*—a 'likelihood

of substantial and immediate irreparable injury.'"  *City of Los Angeles v. Lyons*, 461U.S. 95, 111

(1983) (emphasis added).  *See Tomasino v. Estee Lauder Companies Inc.*, No. 13–CV–4692

(ERK) (JMA), 2014 WL 4244329, at *3 (E.D.N.Y. Aug. 26, 2014) (named plaintiff in putative

class action did not allege "a sufficient future injury to establish standing to assert her claims for

injunctive relief because she has demonstrated that she is, in fact, unlikely to purchase [the]

products again" in view of allegations "she would not have purchased them in the first place absent the allegedly misleading advertisements").[9]

Because plaintiffs claim that they relied on the allegedly misleading labeling and packaging in deciding to buy the product (*e.g.*, FAC ¶ 5), and now—by virtue of bringing this lawsuit—cannot plausibly claim that they will ever be "deceived" again by Right Guard's labeling and packaging, they cannot allege a future injury sufficient to confer standing on their claim for an injunction.

## VI.   COUNTS 11 AND 12 FAIL TO STATE CLAIMS FOR NEGLIGENT MISREPRESENTATION AND COMMON-LAW FRAUD

Plaintiffs' fraud and negligent misrepresentation counts fail to plead a plausible claim and therefore should be dismissed.   In addition, plaintiffs' fraud claim does not satisfy the particularity requirement of Rule 9(b).  *See Wood v. Applied Research Assocs.*, 328 Fed. App'x. 744, 747 (2d Cir. 2009) (grounds for fraud claim under New York law must be "state[d] with particularity").  To satisfy the pleading requirements of Rule 9(b), allegations must (1) specify the allegedly fraudulent or misleading statements, (2) identify the speaker of those statements, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Furthermore, the factual allegations must provide facts "that give rise to a strong inference of fraudulent intent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.,* 47 F.3d 47, 52 (2d Cir. 1995)).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial

---

[9] *See also Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (former XM customer lacked standing to seek an injunction because "now keenly aware of XM's renewal practices and policies, … he is very unlikely to suffer from being billed without his knowledge").

ACTIVE 207325722v.5

evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128.  Plaintiffs' fraud

claims do not—and cannot—satisfy these standards, and therefore should be dismissed.[10]

A.      **Negligent Misrepresentation**

Despite plaintiffs' assertion that they were invoking the laws of "all states," one

plaintiff's state of residence (Arkansas) does not even recognize the tort of negligent

misrepresentation.  *S. Cnty., Inc. v. First W. Loan Co.*, 315 Ark. 722, 871 S.W.2d 325, 326

(1994).  Plaintiffs' claim of negligent misrepresentation fares no better under the law of

jurisdictions where the cause of action actually exists.  In all of those jurisdictions, plaintiffs

must plead and prove, *inter alia*, a misrepresentation of material fact.  *Wu v. Dunkin' Donuts,*

*Inc.*, 105 F. Supp. 2d 83, 96 (E.D.N.Y. 2000), *aff'd* 4 F. App'x 82 (2d Cir. 2001) (New York);

*Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001) (California); *Osorio v.*

*State Farm Bank, F.S.B.*, 746 F.3d 1242, 1259 (11th Cir. 2014) (Florida); *Green v. Morgan*

*Properties*, 215 N.J. 431, 73 A.3d 478, 493-94 (2013); *Halper v. Jewish Family & Children's*

*Serv. of Greater Philadelphia*, 600 Pa. 145, 151-52, 963 A.2d 1282, 1286 (2009).  For the

reasons set forth in Sections I-III above, however, plaintiffs fail to adequately plead a

misrepresentation of material fact.

Nor can plaintiffs demonstrate the existence of "either a duty or a special relationship

with [defendant] distinguishable from the contract itself."  *Scott v. KeyCorp*, 247 A.D.2d 722,

725, 669 N.Y.S.2d 76, 79 (3d Dep't 1998).  To satisfy that requirement, plaintiffs would need to

allege the existence of a relationship that *preexisted* their purchase of Right Guard.  *Manti's*

*Transp., Inc. v. C.T. Lines, Inc.*, 68 A.D.3d 937, 940, 892 N.Y.S.2d 432, 434 (2d Dep't 2009)

(contract of sale "does not create 'a special relationship between two parties to a contract'").

---

[10] The lack of particularity in the Complaint is also evident in plaintiffs' failure to identify the specific size (2.6 ounces or 3.0 ounces) of the product each plaintiff purchased.

ACTIVE 207325722v.5

Furthermore, "[a] 'special relationship' requires a closer degree of trust than an ordinary business relationship." *H&R Project Assocs., Inc. v. City of Syracuse*, 289 A.D.2d 967, 968, 737 N.Y.S.2d 712, 714 (4th Dep't 2001) (internal citation omitted).  Because "nothing more than an ordinary business relationship existed between [plaintiffs] and [Henkel]," Count 11 must be dismissed for failure to state a claim.  *Id.* (internal citation omitted).[11]

### B.     Common-Law Fraud

Plaintiffs' fraud claims suffer from the same fundamental defect as their negligent misrepresentation claims:  an absence of concrete allegations showing "a misrepresentation or a material omission of fact which was false."  *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (alterations omitted) (New York law requires, *inter alia*, a material misrepresentation of fact, intent to induce reliance, and justifiable reliance); *see also Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999) (Florida); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 317 (3d Cir. 2014) (New Jersey); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 225 n.13 (3d Cir. 2008) (Pennsylvania); *Doe v. Gangland Productions, Inc.*, 730 F.3d 946, 960 (9th Cir. 2013) (California).

In addition, plaintiffs' fraud claims should be dismissed because, in light of the facts they admit knowing at the time of their purchases, they cannot hope to sustain their argument that they justifiably relied only on the volume of Right Guard's packaging when deciding whether to purchase it.  *See* FAC ¶ 198.

Plaintiffs allege that they relied on Right Guard's *volume*—apparently in lieu of its weight—in deciding to purchase it.  *See id.* ¶¶ 198-199.  Even if true, such reliance would fail

---

[11] Because the requisite relationship "must have existed prior to the transaction giving rise to the alleged wrong, and not as a result of it," the absence of "such a relationship [i]s properly determin[able] as a matter of law." *Emigrant Bank v. UBS Real Estate Sec., Inc.*, 49 A.D.3d 382, 385, 854 N.Y.S.2d 39,42 (1st Dep't 2008).

the test of reasonableness imposed by all of the state laws at issue.  As plaintiffs plead, 2.6 ounce Right Guard and 3.0 ounce Right Guard are sold in containers with "exactly the same" "size and dimensions"—*i.e.*, *exactly the same volume*. *Id.* ¶ 45.  A reasonable consumer choosing between two products with the same volume container would of course look to the products' *weight*— precisely as Congress and the FDA expected and intended when crafting the regulations for cosmetics and OTC drugs.  Indeed, even plaintiffs concede that they "relied on the net weight listed on the Product labels in evaluating how much deodorant/antiperspirant was in the Products."  (*Id.* ¶ 52.)  No reasonable consumer would fail to understand the meaning of the label "BONUS! +15% MORE" on the 3.0 ounce version of the product, or think that the 2.6 ounce version held the same amount of product.[12]

These facts are fatal to any assertion of justifiable reliance.  "Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations[.]"  *Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 98-99 (1st Dep't 1997); *accord Ittleson v. Lombardi*, 193 A.D.2d 374, 376 (1st Dep't 1993) (declaring the law on this point "established" and collecting cases dating to 1892).  It is neither reasonable nor justifiable to blindly rely on the volume of a product in the face of clear evidence that product quantity is not measured or marketed according to that metric.

Moreover, plaintiffs' fraud claims also fail for the independent reason that they have not adequately pleaded scienter.  *See*, *e.g.*, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178-79 (2d Cir. 2004) (for any fraud-based claim, "'plaintiffs must allege *facts* that give rise to a *strong* inference of fraudulent intent'") (first emphasis added); *Blaize-Sampeur v.*

---

[12] That label (as well as common sense) also conveyed the unmistakable message that the product's container size did not precisely define the volume of product in the container.

*McDowell*, No. 05-CV-4275 (JFB)(ARL), 2006 WL 3903957, at *4 (E.D.N.Y. Oct. 18, 2006) (applying "strong inference" standard to common law fraud claims). Instead of heeding this obligation to plead *facts* in support of their scienter allegations, plaintiffs rely on *ipse dixit*, saying only that "Defendants intentionally made materially false and misleading representations," which they "knew or should have known [were] false and misleading." FAC ¶¶ 198, 200. This pleading is precisely the sort of "[t]hreadbare recita[l] of the elements of a cause of action, supported by mere conclusory statements, [that does] not suffice" to state a cause of action for purposes of Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

## VII.   COUNT 13 FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

The unjust enrichment claim should be dismissed on two independent grounds: it is duplicative of the other claims discussed above and, in any event, fails to plead all of the elements of unjust enrichment required under New York law.

Under New York law, "[t]he basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also, e.g.*, *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001) (listing the elements of an unjust enrichment claim as "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances were such that equity and good conscience require the defendants to make restitution"); *Durst v. Milroy Gen. Contracting, Inc.*, 52 A.3d 357, 360 (Pa. Super. 2012); *El Paso Production Co. v. Blanchard*, 371 Ark. 634, 646-47, 269 S.W.3d 362, 372 (2007); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (California); *Merle Wood & Assocs. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (Florida); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 268 (3d Cir. 2008) (New Jersey).

"[U]njust enrichment is not a catchall cause of action to be used when others fail."
*Corsello*, 18 N.Y.3d at 790.  Rather, "[i]t is available only in unusual situations when, though the
defendant has not breached a contract nor committed a recognized tort, circumstances create an
equitable obligation running from the defendant to the plaintiff.  Typical cases are those in which
the defendant, though guilty of no wrongdoing, has received money to which he or she is not
entitled."  *Id.* (citing *Markwica v. Davis,* 64 N.Y.2d 38, 473 N.E.2d 750 (1984)); *Kirby
McInerney & Squire, LLP v. Hall Charne Burce & Olson, S.C.*, 790 N.Y.S.2d 84 (2005)).
Consequently, "[a]n unjust enrichment claim is not available where it simply duplicates, or
replaces, a conventional contract or tort claim."  *Id.* at 790-91; *see also Van Orman v. Am. Ins.
Co.*, 680 F.2d 301, 310-11 (3d Cir. 1982) (New Jersey); *Ogden v. Bumble Bee Foods, LLC*, No.
12-cv-1828, 2014 WL 27527, at *14 (N.D. Cal. Jan. 2, 2014) (California); *Licul v. Volkswagen
Grp. of Am., Inc.*, No. 13-cv-61686, 2013 WL 6328734, at *7-8 (S.D. Fla. Dec. 5, 2013)
(Florida); *Johnson v. ACC1 LLC*, No. 12-cv-143, 2014 WL 1369380, at *2-3 (E.D. Ark. Apr. 7,
2014) (Arkansas).  In *Corsello*, for example, the New York Court of Appeals held that the
plaintiffs' unjust enrichment claim should be dismissed because, "[t]o the extent that [their
trespass, takings, and § 349] claims succeed, the unjust enrichment claim is duplicative," and if,
on the other hand, those claims "are defective, an unjust enrichment claim cannot remedy the
defects."  18 N.Y.3d at 791.

So too here.  Plaintiff avers that "[a]s a result of Defendants' deceptive, fraudulent and
misleading labeling, packaging, advertising, marketing and sales of [Right Guard], Defendants
were enriched, at the expense of Plaintiffs and members of the Class, through the payment of the
purchase price for Defendants' Products."  FAC ¶ 207.  As this allegation and Plaintiffs related
allegations show, *see id.* ¶¶ 203-210, Count 13 is nothing more than a rehashing of Plaintiff's

other causes of action and must therefore be dismissed.  Furthermore, Plaintiffs have failed to

allege that no adequate remedy at law exists, as required for an equitable claim to lie.  *Samiento*

*v. World Yacht Inc*., 883 N.E. 2d 990, 996 (N.Y. 2008).

## CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed in its

entirety and with prejudice.


Dated: New York, New York
      May 7, 2015

Respectfully submitted,

SIDLEY AUSTIN LLP


By:  /s/ James D. Arden
    James D. Arden
    jarden@sidley.com
    787 Seventh Avenue
    New York, New York 10019
    Telephone: (212) 839-5300
    Facsimile: (212) 839-5599


*Counsel for Defendants Henkel Corporation
and Dial Corporation*


Of counsel:
Richard D. Raskin
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

ACTIVE 207325722v.5