**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
:
MICHAEL O'CONNOR,                              :   1:14-cv-05547-ARR-MDG
JOHNNY SZETO,                                  :
ANTONIO ROSADO,                                :
RICHARD DRAEGER,                               :   **ECF CASE**
MICHAEL STOVALL,                               :
DEBRA CONTINO,                                 :
GEORGE FISHER,                                 :
RONALD BRINKLEY,                               :
HERBERT MAEWEATHER, *on behalf of*             :
*themselves and others similarly situated*,    :
                                               :
      Plaintiffs, :
                                               :
    v.                     :
                                               :
HENKEL CORPORATION and                         :
DIAL CORPORATION,                              :
                                               :
      Defendants. :
                                               :
---------------------------------------------------------------X

**DEFENDANTS HENKEL CORPORATION AND DIAL CORPORATION'S**
**REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I. Plaintiffs' Claims Are Preempted and Fail to State a Claim ...............................................2

    A. Plaintiffs' Usable Net Weight Claims Are Preempted and Meritless......................2

    B. Plaintiffs' Total Net Weight Claims Are Preempted and Lack Merit .....................4

    C. Plaintiffs' Slack-Fill Claims are Meritless and Preempted......................................5

    D. The Conduct Alleged by Plaintiffs, if True, Would Fall Within the Weights & Measures Safe Harbors of Federal Guidance and Various State Laws ..................8

II. Plaintiffs Lack Standing to Seek Injunctive Relief..............................................................9

III. Plaintiffs' Remaining Claims Lack Merit..........................................................................10

IV. Plaintiffs' Complaint Should Be Dismissed in Full and with Prejudice............................12

CONCLUSION................................................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allee v. Medrano*,
    416 U.S. 802 (1974) ..................................................................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ........................................................................................................5

*Broder v. Cablevision Sys. Corp.*,
    418 F. 3d 187 (2d Cir. 2005) .....................................................................................................2

*Carter v. Novartis Consumer Health, Inc.*,
    582 F. Supp. 2d 1271 (C.D. Cal. 2008) ...................................................................................11

*In re ConAgra Foods, Inc.*,
    No. 11-cv-05379, 2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) ..............................................9

*Conboy v. AT&T Corp.*,
    241 F.3d 242 (2d Cir. 2001) ......................................................................................................2

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777, 967 N.E.2d 1177 (2012) ................................................................................11

*Del Real, LLC v. Harris*,
    966 F. Supp. 2d 1047 (2013) ................................................................................................. 5-6

*Dicuio v. Brother Int'l Corp.*,
    No. 11-cv-1447, 2012 WL 3278917 (D.N.J. Aug. 9, 2012) ......................................................9

*Ebner v. Fresh*,
    No. 13-cv-00477, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013) ......................................... 7-8

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
    689 F. Supp. 2d 585 (S.D.N.Y. 2010) .....................................................................................11

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ......................................................................................................7

*Goldstein v. Home Depot U.S.A., Inc.*,
    609 F. Supp. 2d 1340 (N.D. Ga. 2009) .....................................................................................9

*Great-West Life & Annuity Co. v. Knudson*,
    534 U.S. 204 (2002) ..................................................................................................................3

*Hines v. Overstock.com*,
 No. 09-cv-991 (SJ), 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013) ..........................................7

*Kearney v. Cavalry Portfolio Servs., LLC*,
 No. 12-CV-00860 (DLI) (RML), 2014 WL 3778746 (E.D.N.Y July 31, 2014) .......................7

*McNair v. Synapse Grp.*,
 672 F.3d 213 (3d Cir. 2012)......................................................................................................9

*Mennen Co. v. Gillette Co.*,
 565 F. Supp. 648 (S.D.N.Y.1983), *aff'd* 742 F.2d 1437 (2d Cir. 1984) ...................................6

*Novak v. Kaskas*,
 216 F.3d 300 (2d Cir. 2000)......................................................................................................3

*Owens v. Aspen Funding LLC*,
 No. 08-CV-6588 (CJS), 2011 WL 4024820 (W.D.N.Y. Sept. 9, 2011) ....................................7

*PDK Labs, Inc. v. Friedlander*,
 103 F.3d 1105 (2d Cir. 1997)....................................................................................................2

*PhotoMedex, Inc. v. Irwin*,
 601 F.3d 919 (9th Cir. 2010) ....................................................................................................2

*Pramer, S.C.A. v. Abaplus Int'l Corp.*,
 76 A.D.3d 89, 907 N.Y.S.2d 154 (1st Dep't 2010) ................................................................11

*Scott v. KeyCorp*,
 247 A.D.2d 722, 669 N.Y.S.2d 76 (3d Dep't 1998) ...............................................................10

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998)....................................................................................................................9

*St. John's Univ., New York v. Bolton*,
 757 F. Supp. 2d 144 (E.D.N.Y. 2010) ....................................................................................11

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*,
 245 A.D.2d 96 (1st Dep't 1997) .............................................................................................10

*Verzani v. Costco Wholesale Corp.*,
 No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) ..........................................2, 8

*Waldman v. New Chapter*, Inc.,
 714 F. Supp. 2d 398 (E.D.N.Y. 2010), *aff'd* 742 F.2d 1437 (2d Cir. 1984).............................6

*Warth v. Seldin*,
 422 U.S. 490 (1975)..................................................................................................................9

iii

**Statutes and Regulations**

15 U.S.C. § 1451 ........................................................................................................................... 3

15 U.S.C. § 1454 ........................................................................................................................... 3

21 U.S.C. § 352 ............................................................................................................................. 5

21 U.S.C. § 362 ............................................................................................................................. 5

21 U.S.C. § 453 ......................................................................................................................... 5, 6

21 U.S.C. § 678 ......................................................................................................................... 5-6

21 U.S.C. § 691 ............................................................................................................................. 6

21 U.S.C. § 379r ................................................................................................................ 1, 6, 12

21 U.S.C. § 379s ................................................................................................................ 1, 6, 12

21 C.F.R. § 100.100 ...................................................................................................................... 6

21 C.F.R. § 201.62 ...................................................................................................................... 10

21 C.F.R. § 701.13 ...................................................................................................................... 10

**Other Authorities**

Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 57 (2012) ............................................................................................................... 3

Reply Brief of Defendant Unilever United States, Inc.,
   *Bimont v. Unilever United States, Inc.*,
   No. 14-cv-7749 (JPO) (AJP), D.E. 23 (Apr. 30, 2015) ........................................................ 11

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opp."), like the complaint it defends, is all flash and no flame, resting on poetry and rhetoric rather than facts and law. Plaintiffs' dramatic efforts fail to obscure, much less vindicate, the many and fatal defects in Plaintiffs' pleadings chronicled in Defendants' motion to dismiss:

- *First,* their legal theory, if adopted, would impose packaging and labeling requirements that are "different from or in addition to, or that [are] otherwise not identical with" the obligations imposed by the federal Food, Drug, and Cosmetics Act ("FDCA"). 21 U.S.C. §§ 379r, 379s. In short, the FDCA and its related regulations dictate the information that a stick of deodorant or antiperspirant must contain, including mandates for how a product's weight must be calculated and expressed on the product's label. Plaintiffs seek to hold Defendants liable for not providing *additional* disclosures beyond what Congress has required, but any such requirement would be "in addition to" and "not identical with" the requirements of the FDCA—and thus preempted.

- *Second,* the operative complaint (the "First Amended Complaint" or "FAC") fails to satisfy the strictures of *Twombly*, *Iqbal*, and the Federal Rules provisions they interpret. As explained in those cases (and many more), the rote recitation of the elements of their causes of action do not satisfy the standards of Rule 12(b)(6), much less the more exacting strictures of Rule 9(b) that apply to Plaintiffs' common-law fraud claims.

- *Third,* even if Plaintiffs' boilerplate recitations could clear the hurdle of *Twombly* and *Iqbal*, they would still fail to state a claim. Plaintiffs' deceptive-labeling claim, for example, fails because no reasonable consumer would expect (as Plaintiffs apparently contend) that he or she would be able to extract every last speck of deodorant or antiperspirant from the stick he or she had purchased. Likewise, Plaintiffs allege deviations from products' stated net weight which fall within margins of error expressly permitted by federal guidance and related state-law safe-harbor provisions.

- *Finally,* and setting aside any question of preemption or adequacy-of-pleading under *Iqbal* and *Twombly*, Plaintiffs' tagalong claims—breach of warranty and unjust enrichment—fail to meet the fundamental requirements for those claims under governing state law.

Plaintiffs' Opposition fails to confront many of these defects, and instead seeks to cast Defendants' initial brief as a "knee-jerk motio[n]" that "unnecessarily crowd[s]" the Court's docket. Quite the opposite. Defendants' motion is amply supported by governing law and the

facts as Plaintiffs have pled them. Accordingly, for the reasons stated in Defendant's initial brief, and for those reprised below, the FAC should be dismissed with prejudice.

## ARGUMENT

## I. PLAINTIFFS' CLAIMS ARE PREEMPTED AND FAIL TO STATE A CLAIM

Plaintiffs argue that the FDCA does not preempt state-law claims that merely provide a damages remedy for acts that are already unlawful under the FDCA. (Opp. at 7.) That claim is false, ignoring the lack of a private right of action to enforce the FDCA,[1] but also irrelevant. Plaintiffs do *not* seek to impose liability for acts already unlawful under the FDCA. Rather, they seek to impose additional requirements that are nowhere found in the FDCA, or related FDA regulations, and then hold Defendants liable for violating those *additional*, *state-law* requirements. As demonstrated below, Plaintiffs' opposition never truly answers that simple, but central, question: Do these claims represent "additional," "different," or "not identical" requirements for antiperspirant/deodorant manufacturers like Defendants? Incontrovertibly, the answer is yes.

### A. Plaintiffs' Usable Net Weight Claims Are Preempted and Meritless

Plaintiffs' chief objection to the preemption of their usable net weight claims is a policy argument: Value comparisons are critical to consumers' purchasing decisions, and without complete information about how much of a product is usable, they cannot make informed decisions. The premise of Plaintiffs' position—that value comparisons are important to

---

[1] Plaintiffs claim that the prohibition against "bringing private enforcement actions under the FDCA . . . does *not* prevent individuals from bringing private actions based on state law claims." (Opp. at 7.) In fact, courts have rejected complaints that seek to use state statutes, such as Section 349, as a means of enforcing the FDCA and other statutes that lack a private cause of action. *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499, at \*3 (S.D.N.Y. Sept. 28, 2010); *see PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) (FDCA); *Broder v. Cablevision Sys. Corp.*, 418 F. 3d 187, 200 (2d Cir. 2005) (Communications Act); *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (state law); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (Lanham Act).

consumers—is certainly true, as far as it goes. Indeed, as Plaintiffs point out, the FPLA itself recognizes this point, stating that "[p]ackages and their labels should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." 15 U.S.C. § 1451; *see* Opp. at 9. But that general statement of legislative purpose cannot bear the weight Plaintiffs would assign it. In the first place, Congress has done more than make a general statement of policy that value comparisons are important to consumers. It also has decreed that it is HHS—and not a state or a private plaintiff—that is responsible for "determin[ing] that regulations containing prohibitions or requirements other than those prescribed by . . . this title are necessary to prevent the deception of consumers or to facilitate value comparisons as to any consumer commodity." 15 U.S.C. § 1454(a), (c). Plaintiffs cannot arrogate to themselves—or assign to the courts—a prerogative that Congress has assigned to a federal agency.[2]

       Implicitly conceding that the FDCA does not directly require the disclosures that they seek, Plaintiffs next attempt to invoke the FPLA provision stating that "'[nothing] shall prohibit supplemental statements, at other places on the package, describing in nondeceptive terms the net quantity of contents." (Opp. at 10 (quoting 15 U.S.C. § 1453(b))). But that, of course, conflates *permission* for *optional* statements with a *diktat* that a particular statement *must* be included. Plaintiffs would impose liability on Defendants for failing to make statements allowed, but not required, by federal law. All such claims are preempted.

---

[2] In addition, even if the decision were one for the States or courts rather than Congress, § 1451 would not be the talisman Plaintiffs portray it to be, because, as courts have held time and again, such broad, purposive statements cannot be read to mandate that *any* act that would advance the stated purpose of a law is therefore actually required by that law. *See, e.g.*, *Great-West Life & Annuity Co. v. Knudson*, 534 U.S. 204, 220 (2002) ("vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the specific issue under consideration" (internal quotation marks omitted)); *Novak v. Kaskas*, 216 F.3d 300, 310 (2d Cir. 2000); *see also* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 57 (2012) ("No text pursues its purpose at all costs.").

3

In sum, try as they might, Plaintiffs cannot frame their usable-net-weight claim as anything other than a new, supplemental disclosure requirement not demanded by the FDCA or its implementing regulations. As such, those claims are preempted and must be dismissed.

### B. Plaintiffs' Total Net Weight Claims Are Preempted and Lack Merit

Plaintiffs further claim that their total-net-weight claims are not preempted because they have alleged that Defendants *intentionally* under-filled the Right Guard products at issue here. Yet that accusation rests on no allegation of fact other than the *de minimis* shortfalls alleged as to particular Right Guard exemplars that Plaintiffs claim to have tested. *See* Br. at 17 (discussing failure to plead facts rendering plausible the FAC's net-weight-related claims).

Moreover, Plaintiffs have similarly failed to explain why—if Defendants were systematically and intentionally underfilling their products—only a few of the Right Guard products challenged in this lawsuit are alleged to be under-filled. *Compare* FAC Ex. C (products alleged to have some unusable net weight), *with*, *id.* Ex. D (products allegedly short-weighted). Stated otherwise, Plaintiffs offer no plausible explanation for why Defendants' nefarious short-weighting scheme has extended to the seemingly random assortment of products listed in Exhibit D to the FAC. Based on Plaintiffs' allegations, Right Guard Xtreme Fresh (Energy) and Xtreme Fresh (Recharge) are short-weighted, but Right Guard Xtreme Fresh (Exhilarate) and Xtreme Fresh (Recharge 15% more) are not. *Compare id.*, with FAC Ex. C. Similar inconsistencies riddle virtually all of the brand varietals cited by Plaintiffs. These holes and inconsistencies, even if not fatal to Plaintiffs' claims in themselves, further undermine those claims' plausibility, thereby strengthening the basis for dismissal under *Iqbal*, *Twombly*, and Rule 12(b)(6).

Finally, Plaintiffs seek to rebut Defendants' showing that the FAC's total-weight allegations are implausible (and thus subject to dismissal) because they fail to provide any information on the means or manner used to determine the products' total weight. (Br. at 6.)

4

Yet in trying to do so, Plaintiffs offer nothing more than the trope that "all allegations in the Complaint must be accepted as true" "[a]t this stage" of the proceedings. (Opp. at 12.) But that is only partially correct. As *Iqbal* and *Twombly* make clear, only *plausible* allegations may be accepted as true. Conclusory, irrational, and implausible statements are not entitled to that presumption of correctness at *any* stage of the litigation. Without any factual recitation of the process used, number of trials, observed variance between trials, or other information, Plaintiffs cannot be said to have "provide[d] the grounds upon which [their] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

        **C.**     **Plaintiffs' Slack-Fill Claims are Meritless and Preempted**

Plaintiffs' Opposition says next to nothing regarding preemption of their slack-fill claims, focusing instead on arguing that the FAC's allegations are adequate to state a claim that Right Guard's packaging is materially misleading. Yet these slack-fill claims also are barred under the FDCA's express preemption clause.

This is clearly illustrated by the Eastern District of California's decision in *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047 (2013). There, as here, Plaintiffs tried to salvage their slack-fill claims by arguing that they were merely state-law causes of action for "misbranding" an FDCA-regulated product. *See* 21 U.S.C. §§ 352(i)(1) and 362(d). In *Del Real*, however, the district court held preempted the California law at issue, which purported to outlaw slack fill in various consumer products. 966 F. Supp. 2d at 1047. The federal laws at issue there—the Federal Meat Inspection Act ("FMIA") and Poultry Products Inspection Act ("PPIA")—contain misbranding prohibitions and preemption provisions that are virtually identical to those at issue here. *See id. Compare* 21 U.S.C. § 678 (preempting "[r]equirements . . . which are in addition to, or different

5

than those made under this chapter"), *with*, 21 U.S.C. §§ 379r, 379s (preempting state-law requirements that are "different from," "in addition to," or "otherwise not identical with" those imposed by the FDCA). *See also* 21 U.S.C. §§ 453(n)(4), 691(n)(4) (product is misbranded under the FMIA or PPIA if its "container is so made, formed, or filled as to be misleading"). The *Del Real* court concluded that the general federal misbranding provisions in the FMIA and PPIA did not bar the inclusion of slack fill, and that California's prohibition of "nonfunctional slack fill in packages" imposed a requirement that was "simply nonexistent under federal law." *Del Real*, 966 F. Supp. 2d at 1061. As a result, the court held the California statute preempted. *Id.* at 1064. So too here, where the FDA has not elected to regulate slack fill except as to *food* products. *See* 21 C.F.R. § 100.100; Br. at 13-14.

Indeed, although Plaintiffs have added much window dressing in their amended complaint, at bottom this case remains an effort to impose liability on manufacturers of *cosmetics* and *OTC drugs* for alleged violations of *food-packaging regulations*, namely § 100.100. Yet the FDA has chosen not to declare the inclusion of "non-functional slack-fill" as a form of drug or cosmetic misbranding. As a result, the FDA likewise has not had occasion to consider—much less define—what "non-functional" means in the context of products, like the antiperspirant and deodorant sticks at issue here, that are dispensed from an *inherently functional* container/applicator. *Cf. Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 656 (S.D.N.Y. 1983), *aff'd* 742 F.2d 1437 (2d Cir. 1984) (noting that size of Right Guard deodorant container "improve[ed] the dispensing" of the product).[3]

---

[3] Given the irrelevance of § 100.100 to the instant case, Plaintiffs' citation to *Waldman v. New Chapter*, Inc., 714 F. Supp. 2d 398, 404-05 (E.D.N.Y. 2010)—a food-packaging case which relied on § 100.100—likewise adds nothing to their argument. (Opp. at 17.)

6

On the allegedly misleading nature of Right Guard's packaging, Plaintiffs' principal gambit is to portray that issue as a factual question that cannot be resolved on a motion to dismiss. That is wrong. The central question is whether Right Guard's packaging would be materially misleading to a "*reasonable consumer* acting *reasonably* under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (emphasis added); *see also* Br. at 9-10. Plaintiffs argue strenuously that such a determination is a factual one that cannot be determined at this stage of the proceedings, but the decisions are legion holding that on a motion to dismiss a court may determine as a matter of law whether a representation at issue is "materially misleading." *See Kearney v. Cavalry Portfolio Servs., LLC*, No. 12-CV-00860 (DLI) (RML), 2014 WL 3778746, at*10 (E.D.N.Y July 31, 2014) (granting motion to dismiss Section 349 claim); *Owens v. Aspen Funding LLC*, No. 08-CV-6588 (CJS), 2011 WL 4024820, at *12 (W.D.N.Y. Sept. 9, 2011) (same); *Hines v. Overstock.com*, No. 09-cv-991 (SJ), 2013 WL 4495667, at *9-10 (E.D.N.Y. Aug. 19, 2013) (collecting cases dismissing claims based on a representation that failed to "satisfy the objective test of being 'likely to mislead a reasonable consumer'") (citations omitted). As Defendants explained at length in their opening brief, no reasonable consumer would be misled by Right Guard's packaging, which tells the consumer— in clear, FDA-mandated terms—exactly how much antiperspirant or deodorant it contains. (Br. at 16.)

Plaintiffs also take potshots at several of the cases illustrating why Plaintiffs' consumer-protection claims should be dismissed. They attack *Ebner v. Fresh*, No. 13-cv-00477, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013), on the ground that the plaintiffs in that case—unlike Plaintiffs here—did not allege that the product at issue was short-weighted. (Opp. at 12-13.) However, that is a distinction without a difference. The question *Ebner* decided was whether,

7

despite the existence of a net-quantity disclosure on a product's label, a reasonable consumer would be misled by the size and shape of that product's package. *Ebner* said no. *See* 2013 WL 9760035, at *7 ("[I]t is not reasonable to infer that the oversized packaging and metallic weight would mislead reasonable consumers as to the quantity they are receiving."). That is the same question at issue here, and should receive the same answer. *Ebner* was not cited for the separate question of whether a *de minimis* variation in weight would be misleading.

Plaintiffs launch a similar squib against *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), arguing it is inapposite by attempting to cast it as a case about whether particular items in a container—cocktail sauce, lemon, and garnish in *Verzani*'s "Shrimp Tray with Cocktail Sauce"—should be counted as part of the container's net contents. This case is different from *Verzani*, Plaintiffs argue, because there is no dispute that the deodorant/antiperspirant stick comprises the product's net contents. (Opp. at 14.) Again, Plaintiffs miss the forest for the trees. The issue in *Verzani* was how, as a conceptual matter, to define net contents. *See id.* at *2. There, the plaintiffs sought to limit it to the most important contents (*i.e.*, shrimp), whereas here Plaintiffs seek to limit it to contents they deem sufficiently *usable*. *Id.* In both cases, the challengers sought to rewrite the rules for determining how a product's net weight should be determined, and here—as there—that effort should be rejected.

> D. **The Conduct Alleged by Plaintiffs, if True, Would Fall Within the Weights & Measures Safe Harbors of Federal Guidance and Various State Laws**

As explained in Defendants' Motion to Dismiss, both the NIST Handbook and various state weights-and-measures laws permit reasonable variations from a product's stated net weight. (Br. at 16-18.) Plaintiffs assert that their claims do not fall within the safe harbors at issue because Plaintiffs have alleged *intentional* short-weighting, and that such conduct does not fall within the relevant safe harbors. Plaintiffs point neither to *law* nor to *facts* in support of their

8

position; and, indeed, as discussed above, Plaintiffs plead no facts plausibly showing that any short-weighting is a "willful" and "systematic practice by Defendants." (Opp. at 18.)

## II. PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiffs do not claim that they will ever again be deceived by the packaging of Defendants' products. Instead, they claim that various unnamed, unidentified class members may be deceived and contend that such hypothetical injuries to absent class members may support the *named* class members' standing to seek injunctive relief. (Opp. at 19.) Supreme Court precedent is clear, however, that putative class representatives cannot acquire injunctive standing on the basis of "a generalized interest in deterrence," or in order to protect the rights of others who are not party to the suit. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108-09 (1998); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (declaring that putative class plaintiffs lack Article III standing to seek redress for an "injury [that] has been suffered by other, unidentified members of the [proposed] class").

For that reason, courts regularly dismiss claims for injunctive relief where consumers claim to have been aware of an alleged misrepresentation concerning a product they purchased. *See, e.g.*, *McNair v. Synapse Grp.*, 672 F.3d 213, 225 (3d Cir. 2012); *Dicuio v. Brother Int'l Corp.*, No. 11-cv-1447, 2012 WL 3278917, at *15 (D.N.J. Aug. 9, 2012); *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1348 (N.D. Ga. 2009); *In re ConAgra Foods, Inc.*, No. 11-cv-05379, 2015 WL 1062756, at *33 (C.D. Cal. Feb. 23, 2015). Because the named Plaintiffs lack Article III standing, their claim for injunctive relief should be dismissed. *See Allee v. Medrano*, 416 U.S. 802, 829 (1974) ("standing cannot be acquired through the back door of a class action").

9

**III.     PLAINTIFFS' REMAINING CLAIMS LACK MERIT**

As discussed at length in Defendants' motion to dismiss and reprised briefly below, Plaintiffs' other claims likewise lack merit and should be dismissed.

*Negligent Misrepresentation.*  Plaintiffs do not even attempt to rebut Defendants' showing that Arkansas law does not recognize the tort of negligent misrepresentation.  (Br. at 20 (citing *S. Cnty., Inc. v. First W. Loan Co.*, 315 Ark. 722, 871 S.W.2d 325, 326 (1994))). Plaintiffs also mischaracterize Defendants' negligent-misrepresentation argument, portraying it as an attempt to impose a privity requirement.  (Opp. at 21.)  That is not Defendants' argument. Rather, Defendants argue that, as numerous cases hold, Plaintiffs must—and here cannot—plead and prove the existence of "either a duty or a special relationship with [defendant] distinguishable from the contract itself."  *Scott v. KeyCorp*, 247 A.D.2d 722, 725, 669 N.Y.S.2d 76, 79 (3d Dep't 1998).  Here, neither the FAC nor the Opposition points to any possible source of such a duty or relationship.

*Common-Law Fraud.*  Plaintiffs offer no response to Defendants' straightforward argument that "[w]here a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations."  *Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 98-99 (1st Dep't 1997); *see* Br. at 22.  Here, Plaintiffs had just such an opportunity, by reason of the net weight disclosure on every deodorant or antiperspirant stick— precisely as contemplated by Congress and the FDA, which require such net quantity statements to be made in terms of *weight* rather than volume.  21 C.F.R. §§ 201.62(a), (f), 701.13(a). Plaintiffs were not defrauded, and their claim to the contrary should be dismissed.

*Express Warranty.*  Similarly, Plaintiffs offer no rebuttal to Defendants' arguments that federally mandated disclosures are not express warranties because such statements are *required*

10

*by law*, not offered to induce consumer purchases. *See Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1284 (C.D. Cal. 2008); Br. at 17-18. Moreover, their citation to *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010), is wholly inapposite. That case involved a plain vanilla breach-of-warranty claim and thus has no bearing on a case, such as the one at bar, in which the statements at issue are mandated by federal regulations.

**Unjust Enrichment.** In seeking to preserve their unjust enrichment claim, Plaintiffs cite *Pramer, S.C.A. v. Abaplus Int'l Corp.*, 76 A.D.3d 89, 100, 907 N.Y.S.2d 154, 161 (1st Dep't 2010), and *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010), for the proposition that their claim may survive so long as it is pled in the alternative. (Opp. at 24.) But, as other defendants in parallel actions brought by Plaintiffs' counsel have already pointed out,[4] these decisions have been abrogated by the New York Court of Appeals in *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 791, 967 N.E.2d 1177, 1185 (2012).

The *Corsello* court held:

> Here, plaintiffs allege that Verizon committed actionable wrongs, by trespassing on or taking their property, and by deceiving them into thinking they were not entitled to compensation. To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects. The unjust enrichment claim should be dismissed.

*Id.* So too here. Plaintiffs assert that Defendants have violated various consumer protection statutes and the common law of countless jurisdictions. If they were correct—and they are not—the unjust enrichment claim would be superfluous; if they are wrong on the law—and they are, in

---

[4] *See* Reply Brief of Defendant Unilever United States, Inc., in *Bimont v. Unilever United States, Inc.*, No. 14-cv-7749 (JPO) (AJP), D.E. 2,3 at 14-15 (Apr. 30, 2015).

11

all respects—then their unjust enrichment claim cannot grant them a second bite at the apple.  As in *Corsello*, this claim is duplicative and should be dismissed.

## IV. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED IN FULL AND WITH PREJUDICE

In a footnote to the final sentence of their brief, Plaintiffs cast a lifeline, seeking leave to amend in the event that some or all of their claims are dismissed.  (Opp. at 25 n.9.)  That request should be denied.  The defects catalogued above and in Defendants' opening brief are not mere failures of pleading, but rather constitute fundamental, irremediable defects in Plaintiffs' case.  No matter how artfully they plead, they cannot alter the basic fact that they seek to impose packaging and labeling requirements that are "different from or in addition to, or that [are] otherwise not identical with" those established by the FDCA and associated regulations.  21 U.S.C. §§ 379r, 379s.  Nor can they fundamentally realign the reasonable-consumer standard.  Consequently, Plaintiffs' claims should be dismissed, with prejudice.

## CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed in its entirety and with prejudice.

Dated: New York, New York
       May 29, 2015

Respectfully submitted,

SIDLEY AUSTIN LLP

By: /s/ James D. Arden
    James D. Arden
    jarden@sidley.com
    787 Seventh Avenue
    New York, New York 10019
    Telephone: (212) 839-5300
    Facsimile: (212) 839-5599

*Counsel for Defendants Henkel Corporation and Dial Corporation*

Of counsel:
Richard D. Raskin
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036