```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
MICHAEL O'CONNOR,                                                 :
JOHNNY SZETO,                                                     :
ANTONIO ROSADO,                                                   :
RICHARD DRAEGER,                                                  :
MICHAEL STOVALL,                                                  :
DEBRA CONTINO,                                                    :
GEORGE FISHER,                                                    :
RONALD BRINKLEY,                                                  :
HERBERT MAEWEATHER, on behalf of                                  :
themselves and others similarly situated,                         :
                                                                  :
                    Plaintiff,                                    :
                                                                  :
     -against-                                                    :
                                                                  :
HENKEL CORPORATION and                                            :
DIAL CORPORATION,                                                 :
                                                                  :
                    Defendants.                                   :
----------------------------------------------------------------- X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★  SEP 22 2015  ★
BROOKLYN OFFICE

14-CV-5547 (ARR)(MDG)

NOT FOR PRINT OR ELECTRONIC PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

Plaintiffs brought this putative consumer class action against Henkel Corporation and Dial Corporation, alleging that defendants manufacture, market, and sell products with false and misleading labels in violation of state and common law. Defendants have moved to dismiss this action on the grounds of federal preemption and failure to satisfy the operative pleading standards. For the reasons below, defendants' motion is granted.

1

# BACKGROUND[1]

## A. Defendants and Their Products

Defendant Dial is a wholly-owned subsidiary of Defendant Henkel. First Am. Compl. ("FAC"), Dkt. #16, ¶ 23. Both defendants are incorporated in Delaware and headquartered in Arizona. Id. ¶¶ 23-24. Defendant Dial manufactures household cleaning and personal care products, including the line of antiperspirant and deodorant products at issue in this litigation. Id. ¶ 24. Those products include Right Guard® Total Defense® 5, Right Guard® Xtreme Fresh™, Right Guard® Xtreme Clear®, Right Guard® Extreme Cooling, Right Guard® Clinical Clear™, Right Guard® Sport Original, Right Guard® Sport Triathlon, Right Guard® Sport Fresh, and Right Guard® Sport Active (collectively "products"). Id. ¶ 1.

Defendants sell the products at supermarket chains, convenience stores, and major retail outlets nationwide. Id. ¶ 37. The products are sold in elliptically-shaped applicators measuring approximately 5.5 inches tall and 2.5 inches wide.[2] Id. ¶ 45. Each applicator bears a label on its face. See Ex. A to FAC, Dkt. #16-1. In the bottom right-hand corner, the label states a net weight in both ounces and grams. Id. The stated net weight is either 2.6 ounces or 3.0 ounces.[3] Id.; FAC ¶ 38.

Each applicator contains three components. The first is the deodorant/antiperspirant. FAC ¶ 47. The second is a propel/repel mechanism. Id. ¶ 48. The third is empty space. Id. ¶¶ 47-48. Plaintiffs estimate that applicators bearing the 2.6-ounce label contain a stick of deodorant/ antiperspirant measuring 2.5 inches tall and 2.5 inches wide. Id. ¶ 47. They estimate that

---

[1] The facts in this section have been set forth in the light most favorable to plaintiffs, with all disputes resolved and all inferences drawn in their favor.

[2] Plaintiffs note that Right Guard® Clinical Clear™ has different packaging but do not describe it. FAC ¶ 45.

[3] Right Guard® Clinical Clear™ is sold in different packaging with a label stating a net weight of 1.7 ounces. Ex. D to FAC, Dkt. #16-4.

2

applicators bearing the 3.0-ounce label contain a stick of deodorant/antiperspirant measuring 3.0 inches tall and 2.5 inches wide. Id. The remaining space within the applicators is termed "slack-fill." Id. ¶ 39. A portion of the slack-fill is occupied by the propel/repel mechanism, which allows consumers to change the height of the deodorant/antiperspirant stick vis-à-vis the top of the applicator. Id. ¶¶ 48-49. The propel/repel mechanism occupies only a portion of the slack-fill in the applicator, rendering the remaining space "nonfunctional slack-fill." Id. ¶¶ 39, 47-49. Because the packaging of the applicator is opaque, consumers are unable to determine the volume of deodorant/antiperspirant inside. Id. ¶ 50.

## B. Plaintiffs and Their Suit

Plaintiffs are nine individuals who purchased one or more products within the past year. Id. ¶¶ 14-22. They hail from the following states: Arkansas, California, Florida, New Jersey, New York, and Pennsylvania. Id. In their First Amended Complaint, they seek "redress on a class-wide basis for deceptive and otherwise improper business practices that [defendants] engage in with respect to the labeling and packaging" of the products. Id. ¶ 1. They allege that defendants have violated state and common law by selling products that (1) display net weight statements greater than the actual weight of usable product; (2) display net weight statements greater than the total net weight of the product, whether usable or not; and (3) contain nonfunctional slack-fill. Id. ¶ 2. According to plaintiffs, these business practices deceive consumers by mischaracterizing the quantity of deodorant/antiperspirant in the products.

This putative class action was filed on September 22, 2014 by Adam Stoltz. Compl., Dkt. #1. His five-count complaint alleged violations of New York General Business Law § 349 as well as negligent misrepresentation, common law fraud, and unjust enrichment under the laws of all fifty states and the District of Columbia. Id. ¶¶ 61-97.

3

The subject of this motion to dismiss is the First Amended Complaint, which was filed on February 26, 2015. The 58-page complaint lists nine plaintiffs and thirteen counts. FAC ¶¶ 14-22, 86-210. Counts I through IX allege violations of the New York Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349 (Counts I and II); New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq. (Count III); California Consumer Remedies Act, Cal. Civ. Code § 1750, et seq. (Count IV); California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. (Count V); California False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. (Count VI); Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 et seq. (Count VII); Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. and Cons. Stat. Ann. § 201-1, et seq. (Count VIII); and Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et seq. (Count IX). FAC ¶¶ 86-177. The remaining counts allege breach of express warranties (Count X) under the laws of all fifty states as well as negligent misrepresentation (Count XI), common law fraud (Count XII), and unjust enrichment (Count XIII) under the laws of all fifty states and the District of Columbia. Id. ¶¶ 178-210.

Plaintiffs seek certification of nationwide and state classes for all persons or entities who made retail purchases of the products therein during the applicable limitations periods. Id. ¶¶ 67-73. They further seek injunctive, declaratory, and monetary relief, as well as fees and expenses. Id. at 56-57.

## C. Federal Regulatory Scheme

Central to this motion is the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. ("FDCA"). The FDCA was enacted in 1938 as part of a comprehensive federal regulatory scheme to protect consumers from fraud or misrepresentation in the sale of food, drugs, and cosmetics. It charges the Food and Drug Administration ("FDA") with protecting public health

by ensuring, inter alia, that "drugs are safe and effective," 21 U.S.C. § 393(b)(2)(B), and that "cosmetics are safe and properly labeled," id. § 393(b)(2)(D). To accomplish these aims, the FDA may promulgate regulations and enforce those regulations through administrative proceedings. See 21 C.F.R. § 7.1 et seq. The FDCA does not create a private right of action. Medtronic, Inc. v. Lohr, 518 U.S. 470, 487 (1996).

Under the FDCA, different sets of regulations apply to different categories of products. One category is drugs, which includes "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" as well as "articles (other than food) intended to affect the structure or function of the body of man or other animals." 21 U.S.C. §§ 321(g)(1)(B)-(C). Another category is cosmetics, which includes "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance." Id. § 321(i)(1). The products at issue, "deodorants that are also antiperspirants," qualify as both drugs and cosmetics.[4] Accordingly, they "must comply with the requirements for both."[5]

With respect to labeling and packaging, the federal regulatory scheme requires cosmetics and nonprescription drugs to bear a label stating the "net quantity of contents," defined as the quantity "in the package exclusive of wrappers and other material packed therewith." See 21 C.F.R. §§ 201.62(a), (f) (nonprescription drugs); id. §§ 701.13(a), (g) (cosmetics). The regulations specify that the quantity should be measured in terms of weight for solid and semisolid products. Id. While "[t]he declaration of net quantity of contents shall express an accurate statement of the quantity of contents of the package," the regulations permit

---

[4] U.S. Food and Drug Admin., Is It a Cosmetic, a Drug, or Both (Or Is It Soap?), http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm (last updated Apr. 30, 2012).

[5] Id.

5

"[r]easonable variations" from stated quantity measurements provided they are not "unreasonably large." Id. § 201.62(q) (nonprescription drugs); id. § 701.13(s) (cosmetics). Further, they empower the FDA Commissioner to issue supplemental regulations for specific products if he or she determines that declaring net quantity by weight "does not facilitate value comparisons by consumers." Id. § 201.62(a)(2) (nonprescription drugs); § 701.13(a) (cosmetics).

The FDCA contains preemption clauses for both cosmetics and nonprescription drugs. Those clauses bar any state law establishing or continuing any requirement for labeling or packaging "that is different from or in addition to, or that is otherwise not identical with" a requirement of the FDCA or enumerated federal statutes. 21 U.S.C. § 379r (nonprescription drugs); id. § 379s (cosmetics). Those statutes include the Fair Packaging and Labeling Act, 15 U.S.C. § 1451 et seq. ("FPLA"), which also contains a preemption clause for state laws that "require information different from the requirements" of the FPLA or its implementing regulations. Id. § 1461.

## DISCUSSION

### A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations of the complaint permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In deciding a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 555-56. However, the court is "not bound to accept as true a legal conclusion couched as a factual

allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**B.     Analysis**

Defendants seek to dismiss each count of the First Amended Complaint, citing preemption, failure to satisfy the operative pleading standards, or both.

        a.     <u>Usable net weight (Counts I-IX)</u>

Plaintiffs claim that the net weight listed on each product is false and misleading "due to a significant portion of the deodorant/antiperspirant being embedded under the plastic platform ('bed') on which the deodorant stick stands, rendering such portion unusable as it cannot be accessed by the consumer." FAC ¶ 40; see also Ex. C to FAC, Dkt. #16-3. In their motion to dismiss, defendants contend that these "usable net weight" claims are preempted. Defs.' Memo in Support of Mot. to Dismiss ("Defs.' Mem."), Dkt. #24, at 7-9. According to defendants, these claims fall within the FDCA's express prohibition on state laws establishing or continuing any requirement for labeling or packaging "that is different from or in addition to, or that is otherwise not identical with" a requirement of the FDCA or certain related federal statutes. 21 U.S.C. § 379r (nonprescription drugs); id. § 379s (cosmetics).

Under the Supremacy Clause of the United States Constitution, U.S. Const., art. VI, cl.2, state laws that "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution" are invalid. Gibbons v. Ogden, 22 U.S. 1, 211 (1824). A state law that would otherwise be valid is preempted if: (1) Congress expressly preempts the state law; (2) Congress completely occupies the law's field of operation; (3) compliance with both federal and state law is impossible; or (4) the state law presents an obstacle to the achievement of the full purposes and objectives of Congress. See Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 604-05 (1991).

Every preemption analysis begins with the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).

It is well-established that "the FDCA does not preempt state laws that allow consumers to sue manufacturers that label or package their products in violation of federal law." Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 757 (9th Cir. 2015). Instead, it preempts any state law that imposes a requirement "that is different from or in addition to, or that is otherwise not identical with" a requirement of the FDCA or certain related federal statutes. 21 U.S.C. § 379r (nonprescription drugs); id. § 379s (cosmetics). Accordingly, plaintiffs can escape the preemptive force of the FDCA only if their claims seek to impose requirements that (1) are identical to those imposed by the FDCA, or (2) are outside the scope of the relevant federal requirements. See Bimont v. Unilever U.S., Inc., No. 14-cv-7749, 2015 WL 5256988, at *2 (S.D.N.Y. Sept. 9, 2015) (citing Ackerman v. Coca-Cola Co., No. 09-cv-395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010)). "Where federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements." In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig., 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008).

The federal regulatory scheme addresses measurement and labeling of product quantity head-on. It requires that nonprescription drugs and cosmetics display a label bearing "net quantity," defined as the quantity "in the package exclusive of wrappers and other material packed therewith." 21 C.F.R. §§ 201.62(a), (f) (nonprescription drugs); id. §§ 701.13(a), (g) (cosmetics). Further, the FDCA and FPLA expressly preempt state laws that impose different or additional requirements on the labeling of net quantity of products. See 15 U.S.C. § 1461; 21

8

U.S.C. § 379r (nonprescription drugs); 21 U.S.C. § 379s (cosmetics). Yet different or additional requirements are precisely what plaintiffs seek in this litigation. Specifically, they contend that defendants should "add[] visual markers indicating the actual height and dimensions of the Product or us[e] clear see-through packaging." Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Mem."), Dkt. #25, at 11 (citing FAC ¶ 54). Plaintiffs do not dispute that such methods of packaging are "supplemental" to the requirements of federal law. Instead, they argue that preemption does not bar their claims because federal law permits manufacturers to add supplemental statements clarifying net weight. Id. at 9-10 (citing 15 U.S.C. § 1453(b)).

It is true that federal law permits supplemental statements, but that permission has no bearing on preemption. The crux of the preemption inquiry is what federal law requires, not what federal law permits, as only violations of federal requirements give rise to liability under state law. Bowling v. Johnson & Johnson, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014); Turek v. Gen. Mills, Inc., 662 F.3d 423, 426 (7th Cir. 2011) ("The disclaimers that the plaintiff wants added to the labeling of the defendants' [products] are not identical to the labeling requirements imposed on such products by federal law, and so they are barred"; "Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test; identity is."). Preemption bars state law causes of action that "impose obligations not imposed by federal law." In re PepsiCo., 588 F. Supp. 2d at 534.

The only remaining argument against preemption concerns scope. If plaintiffs can show that their claims seek to impose requirements outside the scope of the relevant federal requirements, preemption does not apply. See Bimont, 2015 WL 5256988, at *2 (citing Ackerman, 2010 WL 2925955, at *6). However, this court finds that the requirements plaintiffs

9

seek to impose fall within the scope of the federal requirements. The FDA's implementing regulations acknowledge circumstances in which the "practice of declaring net quantity of contents by weight" may not "facilitate value comparisons by consumers." 21 C.F.R. § 201.62(a)(2) (nonprescription drugs); id. § 701.13(a) (cosmetics). In such circumstances, the regulations provide that the Commissioner of the FDA may "by regulation designate the appropriate term or terms to be used." Id. To that end, the regulations impose additional requirements on, for example, the labeling of cosmetics dispensed from pressurized containers. Id. § 701.13(g)(1). These regulations illustrate that the FDA can and does impose additional labeling requirements when the standard net weight declaration leaves consumers with insufficient, misleading, or inaccurate information. Yet the FDA has declined to do so for the category of products at issue here. Because federal law does not impose an obligation to include supplemental statements regarding usable net weight, preemption bars these claims.

        b.     Nonfunctional slack-fill (Counts I-IX)

Plaintiffs contend that defendants mislead consumers by packaging the products in containers that are larger than necessary, thereby giving the appearance that they contain more deodorant/antiperspirant than they do. FAC ¶ 49. Defendants argue in their motion that claims regarding nonfunctional slack-fill are preempted for substantially the same reasons that usable net weight claims are preempted. Defs.' Mem. at 13. Preemption bars these nonfunctional slack-fill claims based on the same analysis set forth above.

Congress recognized that packaging has the capacity to deceive consumers or complicate value comparisons. See 15 U.S.C. § 1454(c). To avoid that result, it charged the FDA with promulgating regulations to "prevent the nonfunctional-slack-fill of packages containing consumer commodities." Id. §§ 1454(a), (c)(4). Pursuant to this authority, the FDA has regulated

slack-fill in food products, 21 C.F.R. § 100.100; however, it has declined to do so for cosmetics and nonprescription drugs. The FDA's silence on slack-fill in cosmetics and nonprescription drugs is "tantamount to a conscious decision by the agency to permit" it. Bimont, 2015 WL 5256988, at *5 (quoting Astiana, 783. F.3d at 758). Accordingly, the prohibition on nonfunctional slack-fill that plaintiffs seek would impose requirements different from or additional to those required by federal law – and usurp the role of the FDA in determining what if any slack-fill requirements are necessary to protect consumers. Further, the prohibition falls within the scope of the relevant federal requirements, as evidenced by the fact that the FDA can and does regulate nonfunctional slack-fill. For these reasons, plaintiffs' claims regarding nonfunctional slack-fill are preempted.

        c.      <u>Total net weight (Counts I-IX)</u>

Plaintiffs claim that the net weight listed on certain products is false and misleading because "the total net weight of the deodorant/antiperspirant (whether usable or not) is below the amount advertised on the labels as net weight." FAC ¶ 42; Ex. D to FAC, Dkt. #16-4. Plaintiffs allege disparities between actual and stated net weight that range from .05 ounces to .10 ounces, representing shortfalls between 1.67 percent and 5.88 percent. Ex. D to FAC, Dkt. #16-4. They claim that these disparities result from a systematic practice of under-filling by defendants. FAC ¶ 59.

In their motion to dismiss, defendants scrutinize the methodology employed by plaintiffs to generate the alleged weight disparities. See Defs.' Mot. at 11-12. Further, they argue that the federal regulations permit reasonable variations in amounts that exceed the variations claimed by plaintiffs. Id. at 12. The federal regulations cited by defendants require accurate declarations of net quantity of contents. 21 C.F.R. § 201.62(q) (nonprescription drugs); § 701.13(s) (cosmetics).

11

However, they permit variations from the stated net quantity in particular circumstances: "Reasonable variations caused by loss or gain of moisture during the course of good distribution practice or by unavoidable deviations in good manufacturing practice will be recognized. Variations from stated quantity of contents shall not be unreasonably large." Id. Defendants argue that the variations pled by plaintiffs – even if true – are not "unreasonably large." Defs.' Mot. at 12. In support of this contention, they cite regulatory guidance promulgated by the Commerce Department's National Institute of Standards and Technology ("NIST"). They argue that those standards, which have been adopted by each of the states whose consumer protection laws plaintiffs invoke, permit variations far greater than those at issue here. Id. at 12. According to defendants, state law claims based on variations within these safe harbors are not "unreasonably large" so as to trigger liability. Id.

Plaintiffs do not dispute that the federal and state regulatory schemes permit variations consistent with NIST standards. Pls.' Mem. at 12. Instead, they argue that such variations are permitted only when they result from the circumstances described in the federal regulations: (1) loss or gain of moisture during the course of good distribution practice, or (2) unavoidable deviations in good manufacturing practice. See 21 C.F.R. § 201.62(q) (nonprescription drugs); id. § 701.13(s) (cosmetics). They claim that "nothing in the regulations contemplates intentional and systematic under-filling as alleged in Plaintiffs' Complaint." Pls.' Mem. at 12. In response, defendants question the relevance of what caused variations within the safe harbor. Defs.' Reply in Support of the Mot. to Dismiss ("Defs.' Reply"), Dkt. #26, at 8-9. Further, they argue that plaintiffs failed to adequately plead intentional and systematic under-filling. Id. at 4-5.

The parties agree that the language at issue regulates the <u>magnitude</u> of any variation (i.e., not "unreasonably large"), but they disagree that the language regulates the <u>cause</u> of any

12

variation. Resolving this disagreement is critical to the preemption analysis. Whether the federal regulatory scheme imposes requirements regarding the cause of any variation is dispositive of whether state consumer protection laws may impose liability for violations of those federal requirements.

When interpreting a regulation promulgated by a federal agency under its statutory authority, "analysis begins with the text." Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 204 (2011). The disputed language states, "Reasonable variations caused by loss or gain of moisture during the course of good distribution practice or by unavoidable deviations in good manufacturing practice will be recognized. Variations from stated quantity of contents shall not be unreasonably large." 21 C.F.R. § 201.62(q) (nonprescription drugs); id. § 701.13(s) (cosmetics). It is clear that the phrase starting with "caused by" modifies "reasonable variations," thereby explaining the circumstances under which those reasonable variations will be recognized. Defendants' argument that cause is irrelevant rests on a reading of the regulation's language that would deprive the "caused by" clause of meaning or assume that the enumerated causes are non-exclusive. That reading ignores plain meaning and runs afoul of at least two canons of interpretation[6]: (1) "that courts must give effect, if possible, to every clause and word of a statute," Williams v. Taylor, 529 U.S. 362, 364 (2000); and (2) "that expressing one item of a commonly associated group or series excludes another left unmentioned," United States v. Vonn, 535 U.S. 55, 65 (2002).

Indeed, the Supreme Court has given meaning to an identical "caused by" clause. In Jones v. Rath Packing Co., 430 U.S. 519 (1977), the Court held that the federal law at issue, "as

---

[6] The Supreme Court has authorized applying the canons of statutory interpretation to the task of interpreting regulations. See, e.g., Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 668-69 (2007) (invoking the rule against surplusage); Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 170 (2007) (invoking the rule that the general does not detract from the specific).

13

implemented by statutorily authorized regulations, requires the label of a [product] accurately to indicate the net weight of the contents unless the difference between stated and actual weights is reasonable <u>and results from the specified causes</u>." <u>Id.</u> at 529-30 (emphasis added). The Court concluded that a manufacturer does not violate the federal requirements "if the label accurately states the net weight, with allowance for the <u>specified</u> reasonable variations." <u>Id.</u> at 537-38 (emphasis added). <u>Jones</u> lends strong support to plaintiffs' view that the federal regulatory scheme imposes cause requirements on reasonable variations.

Defendants do not engage with the language of the regulation. Instead, they cursorily note that plaintiffs lack authority for their position that claims alleging intentional under-filling are not preempted. Defs.' Reply at 8-9. Neither the parties nor this court have identified case law addressing this precise issue. In <u>Bimont</u>, the court noted the dearth of authority on this point, and ultimately concluded that "[t]he mere fact (or allegation) that underfilling is intentional ought not to control the outcome." 2015 WL 5256988, at *7. However, that conclusion is in tension with the language of the regulation, which strongly suggests that the cause of the variation matters.[7]

Lacking clear authority on this point, and mindful of the presumption against preemption, this court declines to find preemption of plaintiffs' total net weight claims. That finding is unnecessary at this time. Even assuming <u>arguendo</u> that the federal regulatory scheme imposes requirements regarding the cause of any under-filling, plaintiffs have failed to satisfy their burden under Rule 8(a)(2). Plaintiffs' First Amended Complaint does not plead facts sufficient to permit this court to draw the reasonable inference that the under-filling was caused by intentional and systematic practice, rather than one of the authorized causes.

---

[7] This court recognizes the practical appeal of <u>Bimont</u>'s approach, which would prevent private parties from litigating – and courts from determining – the specific cause of miniscule net weight variations in complex manufacturing processes. However, <u>Bimont</u>'s approach, which does not consider the cause of the variations alleged, is difficult to reconcile with the language and purpose of the regulations.

14

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In Iqbal, the Supreme Court explained that this pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. Instead, the well-pleaded factual allegations must "state a claim to relief that is plausible on its face," meaning that they permit the court to reasonably infer that the defendant is liable. Id. (quoting Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Plaintiffs have failed to satisfy this standard. Here is the totality of their factual allegations concerning the cause of the alleged under-filling: "Defendants HENKEL and DIAL's Product labeling and packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendants' misrepresentations are part of their systematic Product packaging practice." FAC ¶ 59. These allegations are the type of "'naked assertion[s]' devoid of 'further factual enhancement'" that the Supreme Court has rejected. Iqbal, 556 U.S at 678 (quoting Twombly, 550 U.S. at 557). Such conclusory statements are not entitled to the presumption of truth. Id. Accordingly, there are no well-pleaded factual allegations in the First Amended Complaint permitting this court to reasonably infer that defendants acted intentionally and systematically in under-filling their products.

Further, several allegations in the First Amended Complaint are inconsistent with that inference. Exhibit C to the First Amended Complaint shows that the nine products at issue in this litigation are sold in multiple weights and varieties, generating a total of sixteen discrete product variations. Exhibit D to the First Amended Complaint logs the net weight shortfalls alleged by plaintiffs. Exhibit D lists shortfalls for only eight of the sixteen discrete product variations. This exhibit is inconsistent with the claim that any under-filling was intentional and systematic,

instead suggesting that it was accidental and random. Furthermore, the scale of the alleged shortfalls – most of them five-hundredths of one ounce – undermines any inference that the shortfalls are intentional and systematic.

This court finds that plaintiffs have failed to nudge their claims of intentional and systematic under-filling "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, the court dismisses Counts I-IX of the complaint for the reasons set forth above. The court does not address at this time whether plaintiffs have standing to seek injunctive relief pursuant to New York General Business Law § 349(h). That provision merely provides a remedy for persons "injured by reason of any violation of this section." Id. The court has dismissed all claims regarding violations of New York General Business Law § 349. Because plaintiffs lack a predicate violation for this injunctive relief claim, it is likewise dismissed.

    d.    Breach of express warranties (Count X)

Plaintiffs allege that defendants breached express warranties. Specifically, they claim that the product labels constitute warranties of the stated net weight. According to plaintiffs, defendants breached these warranties by providing less deodorant/antiperspirant than indicated on the label. FAC ¶¶ 178-182. Defendants seek dismissal of these claims on preemption grounds, arguing that labels mandated by federal law cannot give rise to liability. Defs.' Mem. at 17-18.

"[O]nly those breach of warranty claims based on statements not required by federal regulations will avoid the bar of preemption." Ackerman, 2010 WL 2925955, at *7; see also Horowitz v. Stryker Corp., 613 F. Supp. 2d 271, 285 (E.D.N.Y. 2009) (barring as preempted a breach of express warranty claim based on statements required and approved by the FDA). This is so because statements mandated by federal law lack the fundamental qualities of a warranty – i.e., they are not "contractual commitment[s] that [a manufacturer] voluntarily undertook by

placing that warranty on its product." Bates v. Dow Agrosciences LLC, 544 U.S. 431, 444 (2005). The statements at issue here are net weights listed on product labels. Federal law requires them to be there. See 21 C.F.R. §§ 201.62(a), (f) (nonprescription drugs); id. §§ 701.13(a), (g) (cosmetics). Accordingly, rather than voluntarily undertaken contractual commitments, they are required disclosures.

This court finds that plaintiffs' claims for breach of express warranties are preempted. The accuracy or inaccuracy of the stated net weights does not affect this finding. See Welchert v. Am. Cyanamid, Inc., 59 F.3d 69 (8th Cir. 1995). In Welchert, the Eighth Circuit confronted a similar situation. That court reviewed a claim for breach of express warranty based on information that the federal agency required the manufacturer to include on the label but that the plaintiffs claimed was misleading or inaccurate. Id. at 72-73. The court held that because the manufacturer was required to include the information, the label statement constituted "a mandated disclosure, not a 'voluntarily undertaken' promise." Id. at 72 (citing Higgins v. Monsanto Co., 862 F. Supp. 751, 761 (N.D.N.Y. 1994) ("[E]xpress warranties have a voluntary quality, which is missing if they are mandated by EPA. The rationale that warrantors should be held to contracts that they voluntarily enter into does not apply when their actions are forced.")).

The Welchert court explicitly recognized the possibility that manufacturers include misleading or inaccurate information in mandated disclosures. However, that possibility did not change the court's decision to bar these claims as preempted:

> A label statement specifically required by [the federal Act] and its corresponding federal regulations does not have the contractual quality of an express warranty. As noted above, it is in the nature of a mandatory disclosure. Thus, any misrepresentation, negligent or otherwise, in such disclosure would therefore sound, if at all, in tort, not contract.

17

Id. at 73 n.6. This court is persuaded by Welchert's logic and therefore dismisses plaintiffs' breach of express warranties claims with prejudice. Even if plaintiffs are able to show that the net weight statements are inaccurate, they have no recourse in contract.

e.  Negligent misrepresentation (Count XI), common law fraud (Count XII), and unjust enrichment (Count XIII)

The remaining counts allege negligent misrepresentation (Count XI), common law fraud (Count XII), and unjust enrichment (Count XIII) in violation of the laws of all fifty states and the District of Columbia. Any claim for negligent misrepresentation, common law fraud, or unjust enrichment based on usable net weight or nonfunctional slack-fill is preempted. As discussed above, the federal regulatory framework imposes no obligation on manufacturers of cosmetics and nonprescription drugs to disclose usable net weight or eliminate nonfunctional slack-fill. Where there is no federal requirement, there can be no state or common law liability. See Ackerman, 2010 WL 2925955, at *6 (clarifying that state and common law duties constitute "requirements" that must be identical to federal requirements in order to avoid preemption); see also Riegel v. Medtronic, Inc., 552 U.S. 312, 325 (2008) ("excluding common-law duties from the scope of pre-emption would make little sense"). To hold otherwise would establish a state or common law requirement "that is different from or in addition to, or that is otherwise not identical with" a requirement of the federal regulatory scheme. 21 U.S.C. § 379r (nonprescription drugs); id. § 379s (cosmetics).

The only remaining question is whether dismissal is also appropriate for claims of negligent misrepresentation, common law fraud, and unjust enrichment based on total net weight. As discussed above, this court declines to dismiss state law claims concerning total net weight on preemption grounds. Instead, this court assumes that the federal regulations impose

requirements regarding the cause of any net weight variations. Under this assumption, manufacturers whose variations result from other causes violate federal law and therefore face liability under state or common law. However, this court also finds that plaintiffs have failed to satisfy the pleading standard in alleging that the variations are caused by intentional and systematic under-filling rather than loss or gain of moisture during the course of good distribution practice or unavoidable deviations in good manufacturing practice.

This court's dismissal of the total net weight claims is dispositive of the negligent misrepresentation, common law fraud, and unjust enrichment claims as well. If plaintiff cannot adequately plead factual allegations that permit this court to draw a reasonable inference that variations resulted from an unauthorized cause, then plaintiffs can point to no violation of a federal requirement providing the basis for state or common law liability. Stated another way, for plaintiffs to survive dismissal of any of their claims, they must adequately plead that defendants violated a federal requirement. Unless or until plaintiffs have adequately pled such a violation, this court must dismiss all claims. Otherwise, the court's ruling would run afoul of the FDCA's express preemption clauses by recognizing legal duties that have no basis in the federal regulatory framework.

## CONCLUSION

For the foregoing reasons, this court dismisses with prejudice Counts I-IX for violations of state consumer protection laws based on claims regarding usable net weight and nonfunctional slack-fill. This court also dismisses with prejudice Count X for breach of express warranties. This court dismisses with leave to amend the following claims: Counts I-IX for violations of state consumer protection laws based on claims regarding total net weight; Count XI for

negligent misrepresentation; Count XII for common law fraud; and Count XIII for unjust enrichment.

This court warns plaintiffs that they should make no effort to amend their complaint unless they have a good-faith basis for their allegations regarding total net weight, which must stand up to the pleading standards articulated above. If plaintiffs choose to amend their complaint, they must do so within 30 days.

SO ORDERED.

/s/(ARR)
Allyne R. Ross
United States District Judge

Dated:   September 21, 2015
         Brooklyn, New York